## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

FIREMAN'S FUND INSURANCE COMPANY, )
    Plaintiff )
                               )      CIVIL NO. 04-11578 PBS
                               )
V. )
                               )
FIRE SYSTEMS, INC., ET AL, )
    Defendants )

## DEFENDANT, PRO CON, INC.'S, ANSWER TO PLAINTIFF'S COMPLAINT, CROSSCLAIMS AND DEMAND FOR JURY TRIAL

### COMPLAINT

1. The Defendant can neither admit nor deny the allegations of Paragraph 1 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

2. The Defendant can neither admit nor deny the allegations of Paragraph 2 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

3. The Defendant can neither admit nor deny the allegations of Paragraph 3 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

4. The Defendant admits the allegations of Paragraph 4 of the Complaint.

5. The Defendant can neither admit nor deny the allegations of Paragraph 5 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

### JURISDICTION AND VENUE

6. The Defendant can neither admit nor deny the allegations of Paragraph 6 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

7. The Defendant can neither admit nor deny the allegations of Paragraph 7 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

## GENERAL ALLEGATIONS

8.    The Defendant can neither admit nor deny the allegations of Paragraph 8 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

9.    The Defendant can neither admit nor deny the allegations of Paragraph 9 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

10.    The Defendant can neither admit nor deny the allegations of Paragraph 10 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

11.    The Defendant can neither admit nor deny the allegations of Paragraph 11 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

12.    The Defendant can neither admit nor deny the allegations of Paragraph 12 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

13.    The Defendant can neither admit nor deny the allegations of Paragraph 13 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

14.    The Defendant can neither admit nor deny the allegations of Paragraph 14 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

15.    The Defendant can neither admit nor deny the allegations of Paragraph 15 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

16.    The Defendant can neither admit nor deny the allegations of Paragraph 16 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

17.    The Defendant can neither admit nor deny the allegations of Paragraph 17 of the Complaint because it is without knowledge or information sufficient to form a belief as to the truth of the said allegations.

## COUNT 1
### Breach of Contract
### (FFIS vs. FIRE SYSTEMS)

18 - 21.    Paragraphs 18 through 21 are not directed to this Defendant and require no response. In the event that this Count is read as being applicable to this Defendant, they are denied.

## COUNT II
### NEGLIGENCE
### (FFIS vs. FIRE SYSTEMS)

22 - 23.    Paragraphs 22 and 23 are not directed to this Defendant and require no response. In the event that this Count is read as being applicable to this Defendant, they are denied.

## COUNT III
### BREACH OF CONTRACT
### (FFIS vs. FIRE SUPPRESSION)

22 -25.(sic) Paragraphs 22 through 25 are not directed to this Defendant and require no response. In the event that this Count is read as being applicable to this Defendant, they are denied.

## COUNT IV
### NEGLIGENCE
### (FFIS vs. FIRE SUPPRESSION)

26 - 27.    Paragraphs 26 through 27 are not directed to this Defendant and require no response. In the event that this Count is read as being applicable to this Defendant, they are denied.

## COUNT V
### BREACH OF CONTRACT
### (FFIS vs. PRO CON)

28.    The Defendant incorporates herein by reference its answers to Paragraphs 1 through 27 of this Answer as if set forth word for word.

29.    The Defendant admits that it contracted with FCR Associates, LLC as the contractor for the work at the premises.

30.    The Defendant denies the allegations of Paragraph 30 of the Complaint.

31.    The Defendant denies the allegations of Paragraph 31 of the Complaint.

3

<u>COUNT VI</u>
<u>NEGLIGENCE</u>
(FFIS vs. PRO CON)

32.    The Defendant incorporates herein by reference its answers to Paragraphs 1 through 31 of this Answer as if set forth word for word.

33.    The  Defendant denies the allegations of Paragraph 33 of the Complaint.

<u>COUNT VII</u>
<u>BREACH OF CONTRACT</u>
(FFIS vs. BRIERE & PAQUETTE, INC., F/K/A
PAQUETTE ELECTRIC, CO., INC.)

34 - 37.    Paragraphs 34 through 37 are not directed to this Defendant and require no response.  In the event that this Count is read as being applicable to this Defendant, they are denied.

<u>COUNT VIII</u>
<u>NEGLIGENCE</u>
(FFIS vs. BRIERE &, INC., F/K/A
PAQUETTE ELECTRIC, CO., INC.)

38 - 39.    Paragraphs 38 through 39 are not directed to this Defendant and require no response.  In the event that this Count is read as being applicable to this Defendant, they are denied.

In further answering, the Defendant, Pro Con, Inc., asserts the following affirmative defenses:

<u>First Affirmative Defense</u>

And further answering, the Defendant says that the damages alleged were caused in whole or in part by negligence of the Plaintiff to a degree greater than any alleged negligence of the Defendant.

<u>Second Affirmative Defense</u>

And further answering, the Defendant says that the damages alleged were not caused by the act or acts of any person for whose conduct the Defendant was legally responsible.

Third Affirmative Defense

And further answering, the Defendant says that the Complaint fails to state a claim against the Defendant upon which relief can be granted.

Fourth Affirmative Defense

And further answering, the Defendant says that there was and is no privity of contract between this Defendant and the Plaintiff.

Fifth Affirmative Defense

And further answering, the Defendant says that the warranty and/or warranties alleged by the Plaintiff did not arise under any contract with the Plaintiff or under any contract alleged or implied.

Sixth Affirmative Defense

And further answering, the Defendant denies that it made warranties of any kind, express or implied, to the Plaintiff or to any person, firm or entity through whom the Plaintiff is entitled to claim.

Seventh Affirmative Defense

And further answering, the Defendant says that any warranties, expressed or implied, which may have been made by the Defendant had expired and were no longer in force at the time of the alleged damages.

Eighth Affirmative Defense

And further answering, the Defendant says that the damage of the Plaintiff arose, if at all, as a result of misuse of the product.

Ninth Affirmative Defense

And further answering, the Defendant denies that it was negligent, careless or grossly negligent in any manner.

Tenth Affirmative Defense

And further answering, the Defendant says that the Plaintiff contributed to the cause of the action and, therefore, the damages, if any, should be diminished in accordance with G.L. c. 23l, §85, as amended.

<u>Eleventh Affirmative Defense</u>

And further answering, the Defendant denies management, supervision, inspection or testing, maintenance, ownership or control of the premises alleged in the Plaintiff's Complaint.

Wherefore, the Defendant demands that the Complaint be dismissed and that judgment enter thereon for Defendant, Pro Con, Inc., together with costs.

The Defendant, Pro-Con, Inc., requests a trial by jury on all issues.

## CROSSCLAIM OF DEFENDANT, PRO CON, INC., AGAINST CO-DEFENDANT, FIRE SUPPRESSION SYSTEMS OF NEW ENGLAND, INC.

### PARTIES

1.    The Defendant/Crossclaimant, Pro Con, Inc., is a New Hampshire corporation with a place of business at 1359 Hocksett Road, Manchester, New Hampshire.

2.    The Defendant in Crossclaim, Fire Suppression Systems of New England, Inc., is a corporation organized under the laws of the State of Rhode Island with a place of business located at 70 Bacon Street, Pawtucket, Rhode Island.

3.    The Defendant in Crossclaim, Paquette Electric Co., Inc., is a corporation organized under the laws of the Massachusetts with a place of business located at 63 Alden Street, Fall River, Massachusetts.

### FACTS

4.    The Plaintiff in the above entitled action has filed a Complaint against the Defendant, Pro Con, Inc., seeking monetary damages allegedly suffered when a pipe burst in the fire suppression system located at its premises causing extensive damage on January 19, 2003.

5.    At all times mentioned in the Plaintiff's Complaint, the Defendant in Crossclaim, Fire Suppression Systems of New England, Inc., was a subcontractor of the Defendant, Pro Con, Inc., at said site. (A copy of the Contract is attached hereto as "Exhibit 1 incorporated herein by reference".)

6.    At all times mentioned in the Plaintiff's Complaint, the Defendant in Crossclaim, Paquettte Electric Co., Inc., was a subcontractor of the Defendant, Pro Con, Inc., at said site. (A copy of the Contract is attached hereto as "Exhibit 2 incorporated herein by reference".)

6

## COUNT I – INDEMNIFICATION

7.    In accordance with the terms of the aforementioned Contract, Fire Suppression Systems of New England, Inc., agreed to indemnify and defend Pro Con, Inc. as follows:

Article X (3)

"To the fullest extent permitted by law, the subcontractor shall defend, indemnify and hold harmless the contractor, the owner, and the architect, and their agents and employees from and against all claims, damages, losses, and expenses, including, but not limited to attorneys' fees, arising out of or resulting from the performance of the work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, death, false arrest, malicious prosecution, wrongful eviction, wrongful entry, advertising, injury, discrimination, libel, slander, invasion of privacy or false imprisonment, or to damage, destruction or loss of use of property, and (2) is caused in whole or in part by any negligent act or omission of subcontractor, sub-subcontractor, anyone directly or indirectly employed by any of them or for anyone for whose acts any of them may be libel, regardless of whether or not it is caused in part by a party indemnified hereunder."

8.    The Contract was signed by a representative of Fire Suppression Systems of New England, Inc., on or about August 20, 2001.

9.    The Defendant/Crossclaimant, Pro Con, Inc., denies the allegation of the Plaintiff's Complaint and says that it was not negligent and is not responsible for the Plaintiff's damages.

10.    The Defendant in Crossclaim, Pro Con, Inc., says that should it be held liable to the Plaintiff, then the Defendant in Crossclaim, Fire Suppression Systems of New England, Inc., is liable to it in the full amount of any award adjudged against Pro Con, Inc. in accordance with the aforementioned Contract.

WHEREFORE, the Defendant in Crossclaim, Fire Suppression Systems of New England, Inc., owes the Defendant/Crossclaimant, Pro Con, Inc., a duty to hold it harmless in the above captioned matter, and owes attorneys' fees and expenses pursuant to the Contract attached hereto as "Exhibit 1".

## COUNT II – BREACH OF CONTRACT

11.    The Defendant/Crossclaimant, Pro Con, Inc., realleges and incorporates herein by reference Paragraphs 1 through 10 of the Crossclaim.

12.    The Defendant in Crossclaim, Fire Suppression Systems of New England, Inc.'s, failure to name Pro Con, Inc. as an additional insured or failure to obtain the required insurance coverage or make the required arrangements for defense and indemnification or the Defendant/Crossclaimant, Pro Con, Inc., is a breach of its Subcontract and Pro Con, Inc. has been damages thereby. Fire Suppressions Systems of New England, Inc. has otherwise breached its contract with Pro Con, Inc., with respect to its work and Pro Con, Inc., has been damaged thereby.

WHEREFORE, the Defendant/Crossclaimant, Pro Con, Inc., demands judgment against the Defendant in Crossclaim, Fire Suppression Systems of New England, Inc., indemnify and requests an order the Fire Suppression Systems of New England, Inc.'s attorneys' fees and and hold harmless Pro Con, Inc. to pay Pro Con, Inc.'s attorneys' fees and expenses incurred in this matter.

## CROSSCLAIM OF DEFENDANT, PRO CON, INC., AGAINST CO-DEFENDANT, PAQUETTE ELECTRIC CO., INC.

### COUNT III – INDEMNIFICATION

13.    In accordance with the terms of the aforementioned Contract, Paquette Electric Co., Inc., agreed to indemnify and defend Pro Con, Inc. as follows:

Article X (3)

"To the fullest extent permitted by law, the subcontractor shall defend, indemnify and hold harmless the contractor, the owner, and the architect, and their agents and employees from and against all claims, damages, losses, and expenses, including, but not limited to attorneys' fees, arising out of or resulting from the performance of the work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, death, false arrest, malicious prosecution, wrongful eviction, wrongful entry, advertising, injury, discrimination, libel, slander, invasion of privacy or false imprisonment, or to damage, destruction or loss of use of property, and (2) is caused in whole or in part by any negligent act or omission of subcontractor, sub-subcontractor, anyone directly or indirectly employed by any of them or for anyone for whose acts any of them may be libel, regardless of whether or not it is caused in part by a party indemnified hereunder."

14.    The Contract was signed by a representative of Paquette Electric Co., Inc., on or about October 4, 2001.

15.    The Defendant/Crossclaimant, Pro Con, Inc., denies the allegation of the Plaintiff's Complaint and says that it was not negligent and is not responsible for the Plaintiff's damages.

16.    The Defendant in Crossclaim, Pro Con, Inc., says that should it be held liable to the Plaintiff, then the Defendant in Crossclaim, Paquette Electric Co., Inc., is liable to it in the full amount of any award adjudged against Pro Con, Inc. in accordance with the aforementioned Contract.

WHEREFORE, the Defendant in Crossclaim, Paquette Electric Co., Inc., owes the Defendant/Crossclaimant, Pro Con, Inc., a duty to hold it harmless in the above captioned matter, and owes attorneys' fees and expenses pursuant to the Contract attached hereto as "Exhibit 2".

## COUNT IV – BREACH OF CONTRACT

17.    The Defendant/Crossclaimant, Pro Con, Inc., realleges and incorporates herein by reference Paragraphs 1 through 16 of the Crossclaim.

18.    The Defendant in Crossclaim, Paquette Electric Co., Inc.'s, failure to name Pro Con, Inc. as an additional insured or failure to obtain the required insurance coverage or make the required arrangements for defense and indemnification or the Defendant/Crossclaimant, Pro Con, Inc., is a breach of its Subcontract and Pro Con, Inc. has been damages thereby.  Paquette Electric Co., Inc., has otherwise breached its contract with Pro Con, Inc., with respect to its work and Pro Con, Inc., has been damaged thereby.

WHEREFORE, the Defendant/Crossclaimant, Pro Con, Inc., demands judgment against the Defendant in Crossclaim, Paquette Electric Co., Inc., and requests an order the Paquette Electric Co., Inc., indemnify and hold harmless Pro Con, Inc. and to pay Pro Con, Inc.'s attorneys' fees and expenses incurred in this matter.

The Defendant/Crossclaimant, Pro Con, Inc., requests a trial by jury.

Pro Con, Inc.
By its attorney,


Jon S. Hartmere
B.B.O. No. 224510
Law Offices of Jacqueline L. Allen
262 Washington Street, Suite 601
Boston, MA 02108
617-878-4631

### CERTIFICATE OF SERVICE

I, Jon S. Hartmere, attorney for the Defendants, Pro Con, Inc., in the above-entitled action, hereby certify that on the 2 5 th day of September, 2004, I mailed a copy of the within Answer and Crossclaim, postage prepaid, to all counsel.

**1**



Job No.  801069

Task No.  15500

*PRO CON, INCORPORATED*
P.O. Box 4430, 1359 Hooksett Road, Manchester, New Hampshire  03108   (603) 623-8811

IS AGREEMENT made this  **27th**  day of  **July**, in the year  **TWO THOUSAND ONE**

and between  **Fire Suppression Systems of New England, Inc.**
einafter called the "Subcontractor" and Pro Con, Incorporated, a corporation organized under the laws of the State of New Hampshire,
einafter called the "Contractor".

TNESSETH, That the Subcontractor and Contractor for the consideration hereinafter named agree as follows:

RTICLE I.   The Subcontractor agrees that he, as an independent contractor, will to the satisfaction of the Contractor and of the Owner and its
epresentatives furnish all material and perform all work as described in Article II below, or reasonably infereable therefrom, in accordance with the
ogress Schedule (as defined below):

(Project)   **Residence Inn - North Dartmouth, Massachusetts**

r Contractor at

("Site")   **181 Faunce Corner Road, North Dartmouth**

he Agreement between the Owner and the Contractor, the General Conditions of the Contract, Supplementary General Conditions, the  Drawings and
pecifications, and addenda prepared by   **PCI Architecture**

ereinafter called the "Architect" or "Owner's Authorized Agent", and all other documents evidencing the contract between the Owner and the Contractor,
l of which documents, signed by the parties thereto or identified by the Architect or Owner's authorized agent, form a part of the Contract between the
ontractor and the Owner dated   **December 5, 2000**   ,(hereinafter referred to as the "Contract Documents"), and are hereby incorporated by
eference and become a part of this Agreement.  The Contract Documents shall be made available to the Subcontractor upon his request prior to the
xecution of this Agreement and at any time thereafter during the course of the Work.

RTICLE II.   *The Work*:  Subcontractor agrees to furnish, provide, and install all labor, materials, and equipment, and whatsoever else may be required
o fully do, perform, and complete, and will complete without exception, in a neat, first-class, good, and workmanlike manner, to the satisfaction of the
ontractor and of the Architect and the Owner, the following described work:

> See Attachment "A", entitled "General Requirements".
> See Attachment "B", entitled "Scope of Work".
> See Attachment "C", entitled "List of Drawings".
> See Attachment "I", entitled "Insurance Requirements".
> See Attachment "S" entitled "Design Services".
> See Attachment "T" entitled "Massachusetts Tax Obligations".

(the "Work").

ARTICLE III.   *Time for Completion*:  **Time is of the essence in the execution of the Work** and the Subcontractor agrees to commence and complete the
Work in accordance with the time limits stated in the Contract Documents and such schedule as the Contractor may furnish (the "Progress Schedule").
Within five working days of notification by the Contractor, the Subcontractor shall begin the Work and shall prosecute it until completion and without
pause. He shall be held responsible for maintaining the pace set by the Contractor and shall not delay the former or any of the former's other Subcontractors
in any way from completion of the Project. Such delay, unless due to conditions beyond the control and without any fault of the Subcontractor, shall be
chargeable to the Subcontractor, at an amount equal to the charges or penalties that may be assessed against the Contractor by the Owner plus all other costs
to Contractor arising out of such delay.

(a)  Should the Subcontractor be obstructed or delayed in the prosecution or completion of the Work by the act, neglect, delay or default of the
Contractor or the Architect, the Owner, or any other Subcontractor employed by the Contractor or Owner upon the work, or by any damage which may
happen by fire, lightning, earthquake, cyclone, or other similar Natural Disasters, then the time fixed for completion of the Work may be extended for a
period equivalent to the time lost by reason of any of the causes aforesaid (the time extension so allowed shall not exceed the time extension allowed by the
Owner to the Contractor) but no such allowance shall be made unless a claim therefore be presented in writing to the Contractor within forty-eight (48)
hours, Saturday and Sunday excluded, of the occurrence of such delay.  No charges shall be made by the Subcontractor for storage of materials, tools, and
equipment on the work, and no claims shall be made by the Subcontractor for damages for any such delay or cessation of the Work.

(b)  If as a result of any strike, lockout, lightning, earthquake, cyclone, or other similar Natural Disasters, or any other causes beyond its control, the
Contractor is obstructed or prevented from performing any work on the Project and considers it inadvisable to receive materials therefore, then the
Subcontractor shall, upon notification from the Contractor, cease deliveries to and performance of any Work hereunder at the Project until such time as in
the opinion of the Contractor, the conditions are such that it is advisable to resume operations on the Project. Subcontractor hereby agrees to and shall
resume delivery of the materials and performance of the Work as required by written notification to it by the Contractor, no claim for damages shall be made
by either party hereto on account of any cessation of the Work for the causes aforesaid.

(c)  The Subcontractor agrees that it will employ at the Site a foreman who shall have full authority to act for the Subcontractor, and further agrees that
such foreman shall attend all regularly scheduled job meetings and be available at all times during the course of the Work for consultation with
representatives of the Contractor.  It is agreed that such foreman shall, at all times, be acceptable to the Contractor, the Owner, and the Architect, and shall
be available for the duration of the Project unless he ceases to be on the Subcontractor's payroll.

(d)  Subcontractor shall maintain sufficient crew size and manpower to meet the requirement of the Progress Schedule. Subcontractor will, on a daily
basis, review with his crew the work plan to be followed so as to avoid delay in completion of the work, and to assure compliance with the Progre
Schedule, as the same may from time to time be revised.

ARTICLE IV.   *Payment Provisions*:  The Contractor agrees to pay the Subcontractor for the performance of this work the sum of

**One Hundred Sixty Six Thousand Four Hundred Dollars** .......................................................... **($166,400**

subject to additions and deductions for changes as may be agreed upon in writing subject to a retainage of  **10%**  of the amount requisitioned by th.
Subcontractor. Prior to commencement of the Work, Subcontractor shall submit to Contractor a Schedule of Values

Work, in form acceptable to Contractor. The Schedule of Values shall itemize the different parts of the Work and material for the Work and include a ... list of all material suppliers and Subcontractors of the Subcontractor, along with the value of the materials and/or work to be supplied and/or ... hedule of Values will be agreed upon prior to any progress payments being made, and will be the basis of progress payments unless it is found to be ...

) All requisitions must be in the Contractor's office by 4:30 PM the 25th day of the month, for work completed through the 30th day of the month. ...tions received by Contractor after the day and time set forth will be held until the following month without action.

...) The Subcontractor's monthly requisitions shall (i) be submitted on AIA Forms G-702 and G-703 (or a computerized spread sheet providing the ...ation required under, and in a format similar to, AIA Form G-703), which shall include the name and address of each of Subcontractor's ...ntractors and suppliers along with a description of the material, labor, and/or equipment supplied and its value, (ii) include a separate listing of all ...al and equipment supplied from Subcontractor's inventory with the specific items or types of material or equipment exceeding $1,000 in value itemized ...dually, and (iii) if such requisition contains a request for payment for materials or equipment stored off of the Site, evidence of the purchase and ...e thereof, transfer of title documents and evidence of insurance, all in form and substance acceptable to Contractor and Owner.

c) The Subcontractor shall timely pay for all labor and materials used in or in connection with the Work, and shall, with each requisition, submit ...nce satisfactory to the Contractor that all indebtedness connected with the Subcontractor's Work has been satisfied and that all Subcontractor's ...yees subcontractors and suppliers have been paid. Such evidence shall include without limitation, (I) a fully completed payroll affidavit in the form ...ded as Exhibit B, signed by each of Subcontractor's employees who have worked on the Project during the period covered by the requisition and (ii) a ...executed and notarized "Waiver of Liens" in the form provided in Exhibit C from Subcontractor and each of Subcontractor's suppliers and ...ntractors. Contractor specifically reserves the right (iii) to make payments on requisitions submitted by Subcontractor in the form of dual payee ...ks, payable to Subcontractor and its employee, supplier or subcontractors, or (iv) to make such payments directly to Subcontractor's employee, supplier ...subcontractors, and reduce the amount owed to Subcontractor by the amount of such payments, provided, however, that nothing contained in this ...ement shall be deemed to create a direct contractual or employment relationship between Contractor and any of Subcontractor's employees, ...ntractors or suppliers or an obligation on the part of Contractor to make payments thereto.

(d) The submission of the documents and information described in subsections (b) and (c) in form and substance acceptable to Contractor, shall be a ...dition precedent to the issuance of any payment.

(e) No Final Payment shall be due Subcontractor until it has delivered, in form and substance acceptable to the Contractor and the Owner, all record ...wings, warranties, and manuals relating to the Subcontractor's Work which are required to be submitted by the Contractor to the Owner.

(f) No certificate given or payment made under this Agreement or the Contract between the Owner and the Contractor, shall be evidence of the ...ubcontractor's performance of it's obligations under this Agreement, either wholly or in part, and no such certificate or payment shall be construed to the ...eptance of defective work or improper materials. Final payment shall be due when the Work is fully completed and performed in accordance with the ...ntract Documents, Final Payment has been received by the Contractor from the Owner, and the Subcontractor has satisfied all of the requirements of this ...icle IV.

RTICLE V. *Safety:* The Subcontractor shall be responsible for all safety precautions, which may be necessary or appropriate in connection with its ...rformance of the Work. The Subcontractor agrees to comply fully with all local, state and federal ordinances, regulations, and laws; all safety and work ...gulations instituted by the Contractor for this particular Project; and to report all accidents to the Contractor's Project Superintendent within two (2) hours ... the occurrence thereof. The Subcontractor shall provide safe working conditions for its employees and for all others on the Project whose duties ...cessarily require them to be in, on, or about the area where the Subcontractor is working. All employees of the Subcontractor shall wear hard-hats and ...oper footwear. The Contractor's Project Superintendent may remove anyone found in violation of any of these provisions from the job site. The ...bligations of the Subcontractor as to safety as required by this Article are additional and supplementary to the safety precautions the Subcontractor is responsible. ...cessary or appropriate in connection with the performance of the Subcontractor's Work and for which safety precautions the Subcontractor is responsible. ...he Subcontractor hereby agrees to comply fully with the construction safety provisions of the Contract Work Hours Standards Act of 1962, as amended, ...he Occupational Safety and Health Act of 1970, as amended, and any comparable state laws where the Project is being carried out. The Contractor believes ... and stresses a good safety program. Any and all costs incurred by Contractor to correct unsafe conditions, which are Subcontractor's responsibility, will ...e charged to Subcontractor.

Subcontractor shall supply to Contractor a Material Safety Data Sheet ("MSDS") for any hazardous chemicals or materials brought to the Site. ...Subcontractor will not bring to, or store at the site, any hazardous material, unless (i) a MSDS has been filed with the Contractor and is in the Job Site ...Chemical Handbook maintained in the Contractor's on-site office; (ii) is clearly labeled; and (iii) is stored and used in compliance with all applicable laws, ...regulations, and safety precautions. Contractor reserves the right to refuse delivery to the Site of hazardous material, or suspected hazardous material, which ...does not comply with this Article and to have any such materials found on the Site removed at the sole cost and expense of Subcontractor.

ARTICLE VI. *Performance and Payment Bonds.* (Requirement for the furnishing of performance and/or payments bond(s), if any, are contained on ...Attachment hereto.)

ARTICLE VII. *Temporary Site Facilities.* (Requirements and terms concerning temporary site facilities, i.e., storage, sheds, water, heat, light, power, ...toilets, hoists, elevators, scaffolding, cold weather protection, ventilating, pumps, watchman service, etc. are contained on Attachment B hereto)

ARTICLE VIII. *Insurance:* The Subcontractor shall have a direct liability for the acts of all his employees, agents, suppliers, and subcontractors. The ...Subcontractor shall carry insurance in the amounts and on the forms required by Attachment I hereto.

Prior to starting the Work, the insurance herein required to be furnished shall be obtained from a responsible company or companies authorized to do ...business in the State in which the Project is located, and Subcontractor shall provide copies of the policies or certificates thereof acceptable to the ...Contractor.

The required insurance policies (except for Worker's Compensation) shall name Contractor as an Additional Insured on a primary basis (with ...Contractor's insurance policies being non-contributory), and shall contain a provision that coverages afforded under the policies will not be cancelled or not ...renewed until at least thirty (30 days) prior to written notice has been given to the Contractor. Subcontractor shall require all of its subcontractors providing ...labor and materials for the Work to provide the insurance required by Attachment I hereto, naming the Contractor as Additional Insured as provided above, ...and shall provide copies of the policies or certificates thereof to the Contractor.

ARTICLE IX. *Job Conditions:* Subcontractor agrees to exercise special care while working around other in-place construction and to repair any damage ...caused by Subcontractor's Work. Subcontractor will clean up on a daily basis all trash, debris, and material involved with the Work or created by the ...Subcontractor's employees, agents, suppliers, or subcontractors during the execution of the Work, and remove such trash and debris from the Site at its own ...expense. Subcontractor further agrees to secure and protect its Work and to be liable for any and all loss or damage of any kind which may happen to the ...Project (whether such loss or damage relates to the Subcontractor's work, the work of the Contractor or the work of other trades) at any time prior to final ...completion and acceptance thereof. Contractor shall not be responsible for such storage or safety of any materials, equipment or other items used by ...Subcontractors, nor shall Contractor be responsible for providing space for such storage at the Site or elsewhere. Should the Subcontractor fail to clean up ...all debris arising out of this Agreement in any way made or created by the Subcontractor, the Contractor shall have the right to perform this work and charge ...the cost of the same to the account of the Subcontractor.

ARTICLE X. In addition to the foregoing provisions the parties also agree:

(1) The Subcontractor shall be bound to the Contractor by the terms of the Contract Documents and this Agreement and assume toward the Contractor ...all the obligations and responsibilities that the Contractor, by those documents, assumes toward the Owner, as applicable to this Agreement.

(2) If the Owner, Architect, or Contractor rejects the Subcontractor's Work or the Subcontractor's Work is not in conformance with the Contract ...Documents, the Subcontractor shall promptly correct Subcontractor's Work, whether it has been fabricated, installed or completed. Subcontractor shall be

(3) To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Contractor, the Owner, and the Architect, and their agents and employees from and against all claims, damages, losses, and expenses, including, but not limited to attorneys' fees, arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease, death, false arrest, malicious prosecution, wrongful eviction, wrongful entry, advertising, injury, discrimination, libel, slander, invasion of privacy or false imprisonment, or to damage, destruction or loss of use of property, and (2) is caused in whole or in part by any negligent act or omission of the Subcontractor, any sub-subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce any of the rights or obligations of indemnity which would otherwise exist to any party or person described in this paragraph. The indemnification obligation of the Subcontractor under this Subsection 3 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under Worker's Compensation Acts, disability benefit acts or other employee benefit acts, and the Subcontractors shall procure and maintain contractual liability insurance covering its obligations under this Article X.

(4) The Subcontractor shall not assign or subcontract this Agreement or any amounts due or to become due hereunder in whole or in part without the written consent of the Contractor.

(5) The Subcontractor hereby guarantees the Work against all defects of materials and/or workmanship as called for in plans, specifications, and addenda, or if no guarantee is called for, then a period of two years and one day from the date of total acceptance of the Contractor's work by the Owner.

(6) The Subcontractor shall provide Contractor with weekly progress reports of the Work, including the progress of materials or equipment under this agreement that may be in the course of preparation, delivery, or manufacture.

(7) Subcontractor shall make any and all changes or deviations from the original plans and specifications without nullifying the original contract when specifically ordered to do so in writing by the Contractor. The Subcontractor prior to the commencement of this revised Work, shall submit promptly to the Contractor written copies of the cost or credit proposal for such revised work in a manner consistent with the Contract Documents. Subcontractor shall be entitled to receive no extra compensation for extra work, materials or changes or for any additional bond costs regardless of whether same was ordered by Contractor or any of his representatives unless a change order therefor has been issued in writing by the Contractor. If extra work was ordered by the Contractor and the Subcontractor performed same but did not receive a written order therefore, the Subcontractor shall be deemed to have waived any claim for extra compensation therefore, regardless of written or verbal protests or claims by the Subcontractor.

(8) The Subcontractor shall work with the Contractor and other Subcontractors whose work might interfere with the Subcontractor's Work and to participate in the preparation of coordinated drawings in the areas of congestion as required by the Contract Documents, specifically noting and advising the Contractor of any such interference, and cooperate with the Contractor in scheduling his work so as not to conflict or interfere with the work of others. Subcontractor shall promptly submit shop drawings, and samples, as required in order to carry on said work efficiently and at a speed that will not cause delay in the progress of the Contractor's work or other branches of the work carried on by other Subcontractors. Subcontractor shall be responsible for monitoring approvals of submittals and shop drawings to ensure that Contractor's schedule is maintained.

(9) The Subcontractor shall coordinate its work with the Work of the Contractor, the work of the other trades, and the contract drawings and specifications, and shall, at no additional cost, make modifications to its Work, schedule, and materials so as to provide for such coordination and to adapt to job site conditions. The Contractor shall have the right to determine and, if necessary, change the time, order and priority in which the various portions of the Work shall be performed.

(10) The Subcontractor shall comply with all Federal, State and local laws and ordinances applying to the building or structure and to comply and give adequate notices relating to the work to proper authorities and to secure and pay for all necessary licenses or permits to carry on the work as described in the Contract Documents as applicable to this Agreement.

(11) The Subcontractor shall comply with all Federal, State, and local tax laws, Social Security laws, and Unemployment Compensation Laws, Workmen's Compensation laws, and O.S.H.A. insofar as applicable to the performance of this Contract, and defend, indemnify and hold the Contractor harmless from any and all claims in any way relating to actual or alleged non-compliance of said laws and the applicable regulations thereunder.

(12) The Subcontractor hereby agrees that all work shall be done subject to the final approval of the Architect or Owner's authorized agent, and his decision in matters relating to artistic effects shall be final, if within the terms of the Contract Documents.

(13) The Subcontractor hereby agrees that the making of all payments by the Contractor, including retainages, due or alleged to be due to the Subcontractor, are and will be expressly contingent upon acceptance by Owner of all the Subcontractor's Work and prior receipt by the Contractor of like payment from the Owner for Subcontractor's Work and for all of Contractor's work. Subcontractor expressly accepts the risk that he will not be paid for Work performed by him, nor receive retainages, in the event that Contractor, for any reason whatsoever, including insolvency of Owner, is not fully paid by, nor receives all retainages from Owner. Subcontractor states and warrants that, for payment for work performed by him, including retainages, Subcontractor relies solely upon the credit and ability of the Owner and not of the Contractor. Subcontractor therefore agrees that prior acceptance of Subcontractor's Work by the Owner, prior payment by Owner to Contractor for work performed by Subcontractor, including retainages, and prior full payment by Owner to Contractor for all Contractor's work shall be an express condition precedent to any obligation for payment by Contractor to Subcontractor for any work performed, including retainages, by Subcontractor. Subcontractor further agrees that liability of Contractor's payment surety bond, if any, for payment to Subcontractor shall, in addition to any obligations or conditions precedent mentioned in said bond, also be subject to all conditions precedent mentioned herein.

(14) The Subcontractor agrees to cause all liens, attachments and/or claims arising out of the Work to be removed and discharged within ten (10) days of the filing thereof, and to indemnify and hold Contractor and Owner harmless from any and all claims made by any suppliers of labor and material and equipment incorporated into, or relating to, the Work. The Contractor may deduct from any amounts due or to become due to the Subcontractor any sum or sums owing by the Subcontractor to the Contractor, and in the event of any breach by the Subcontractor of any provision or obligation of this Subcontract, or in the event of the assertion by other parties of any claim or lien against the Owner, the Contractor, Contractor's Surety, or the premises upon which the Work was performed, which claim or lien arises out of the Subcontractor's performance of this Agreement, the Contractor shall have the right, but is not required, to retain out of any payments due or to become due to the Subcontractor an amount sufficient to completely protect the Contractor from any and all loss, damage or expenses therefrom, until the claim or lien has been adjusted by the Subcontractor to the satisfaction of the Contractor. This paragraph shall be applicable even though the Subcontractor has posted a full payment and performance bond.

(15) Should the Subcontractor fail at any time to supply a sufficient number of properly skilled workmen or sufficient materials and equipment of the proper quality, or fail in any respect to execute the Work with promptness and diligence, or fail to promptly correct defective work or fail in the performance of any agreements herein contained, all costs damages and expenses relating to or arising out of such failure shall be paid by Subcontractor, and, in addition to the other remedies available to Contractor under this Agreement and the law, the Contractor may, at his option, after giving written notice to the Subcontractor, provide such labor, materials, and equipment and to deduct the cost thereof with all loss or damage occasioned thereby, from any money then due or thereafter to become due to the Subcontractor whether under this Agreement otherwise.

**ARTICLE XI.** *Dispute Resolution.* If a dispute arises out of or relating to this Agreement or its breech, the parties shall endeavor to resolve the dispute through direct discussions. If the dispute can not be resolved through direct discussions, the parties shall participate in mediation under the Construction Industry Mediation Rules of the American Arbitration Association before, and as a condition precedent to, any other form of dispute resolution, including, without limitation actions under applicable mechanic's lien or similar statutes. The location of the mediation shall be the Boston, Massachusetts offices of the American Arbitration Association. Unless otherwise agreed in writing, the Subcontractor shall continue the Work and maintain the Progress Schedule during any dispute resolution proceedings, unless Contractor has terminated this Agreement pursuant to the applicable provisions of Article XII below, which termination provisions shall not be deemed modified or limited by the provisions of this Article. If the Contractor shall be required to enter into arbitration proceedings under any of the Contract Documents, or should the Contractor agree to enter into arbitration under the Contract Documents; then, the Subcontractor shall also be bound by said arbitration proceedings and hereby agrees that he will submit to said arbitration when demand to do so is made by the Contractor.

e of the demand for mediation or arbitration hereunder shall be filed in writing with the appropriate mediating or arbitrating tribunal
be given to the other parties thereto.

*Termination.*

ICLE XII.

(1) 'f the Subcontractor at any time shall refuse or neglect to supply sufficient properly skilled workmen, or materials or equipment of the proper
ty and quantity, or fail in any respect to prosecute Subcontractor's Work with promptness and diligence, or cause by any action or omission the
page or interference with the work of the Contractor or other subcontractors, or fail in the performance of any of the covenants herein contained, or be
le to meet his debts as they mature, the Contractor may and the Subcontractor's failure to cure the default, terminate the Subcontractor's employment by
ific period, but not less than two (2) working days, and the Subcontractor's failure to cure the default, terminate the Subcontractor's employment by
vering written notice of termination to the Subcontractor. Thereafter the Contractor may take possession of the plan and work, materials, tools,
iances, and equipment of the Subcontractor at the building site, and through itself or others provide labor, equipment, and materials to prosecute
contractor's Work on such terms and conditions as shall be deemed necessary, and shall deduct the cost thereof, including without restriction thereto all
ges, expenses, losses, costs, damages and attorneys' fees, incurred as a result of the Subcontractor's failure to perform, from any money then due or
eafter to become due to the Subcontractor.

(2) If the Contractor so terminates the employment of the Subcontractor, the Subcontractor shall not be entitled to any further payments under this
reement until Subcontractor's Work has been completed and accepted by the Owner, and payment has been received by the Contractor from the Owner
h respect thereto. In the event that unpaid balance due exceeds the Contractor's cost of completion, the difference shall be paid to the Subcontractor, but
such expense exceeds the balance due, the Subcontractor agrees promptly to pay the difference to the Contractor, as well as all reasonable expenses,
luding legal fees, incurred by the Contractor because of such termination.

(3) The Contractor may, at any time, terminate this Agreement for the Contractor's convenience and without cause. Upon receipt of written notice of
ch termination, the Subcontractor shall immediately stop the Work, follow all of Contractor's instructions regarding securing of the work and
mobilization, and make its best good faith efforts to mitigate costs. Upon such termination, Subcontractor shall be entitled to be paid for, and Contractor's
bility hereunder shall be limited to, the reasonable value of the Work performed by the Subcontractor prior to such termination and the reasonable costs of
curing the Work and demobilizing.

RTICLE XIII. The parties specifically agree that should the Contractor become civilly and/or criminally cited for the payment of fines or damages as a
sult of a violation of the Occupational Safety and Health Act of 1970 or of any similar State or Federal legislation, as a result of the conduct of the
ubcontractor, then the Contractor will have the right as soon as the liabilities aforesaid are imposed or exposure to such liabilities becomes apparent, to
mmon the Subcontractor and the Subcontractor specifically agrees that he shall indemnify the Contractor, hold the Contractor harmless and shall
ndertake the defense of the Contractor with regard to any of the aforesaid Contractor's liabilities or threatened liabilities arising out of the action or inaction
f the Subcontractor.

This Contract constitutes the entire

ARTICLE XIV.
greement between parties hereto, and it is agreed that this Contract cannot be amended, modified or changed except as herein provided; and it is also agreed
hat the provisions of this Contract cannot be waived except in the same manner as is herein provided.

This Contract shall be governed by

ARTICLE XV.
the laws of the state in which the Project is located, without giving effect to the conflicts of law principals thereof.

IN WITNESS WHEREOF, these parties hereto have affixed their signatures and seals by their authorized agents.

Fire Suppression Systems of New England, Inc.

By: _____    _____
    Subcontractor                        (Title)

_____  8/20/01
(Seal)              (Date)

PRO CON, INCORPORATED (Contractor)

By: _____    _____
                                        (Title)

Attest:

_____  8-22-01
(Seal)              (Date)

EXECUTED COPY SENT
8-23-01

RECEIVED
AUG 22 2001
PRO CON INC.

ENTERED

**2**

**PRO CON**
**CONSTRUCTION**

Job No.  **801069**

Task No.  **16010**

*PRO CON, INCORPORATED*
P.O. Box 4430, 1359 Hooksett Road, Manchester, New Hampshire 03108   (603) 623-8811

THIS AGREEMENT made this   **27th**   day of   **July**, in the year   **TWO THOUSAND ONE**

by and between        **Paquette Electric Co., Inc.**
hereinafter called the "Subcontractor" and Pro Con, Incorporated, a corporation organized under the laws of the State of New Hampshire,
hereinafter called the "Contractor".

WITNESSETH, That the Subcontractor and Contractor for the consideration hereinafter named agree as follows:

ARTICLE I.    The Subcontractor agrees that he, as an independent contractor, will to the satisfaction of the Contractor and of the Owner and its
Representatives furnish all material and perform all work as described in Article II below, or reasonably inferable therefrom, in accordance with the
Progress Schedule (as defined below):

(Project)    **Residence Inn - North Dartmouth, Massachusetts**

for Contractor at

("Site")    **181 Faunce Corner Road, North Dartmouth**

The Agreement between the Owner and the Contractor, the General Conditions of the Contract, Supplementary General Conditions, the Drawings and
Specifications, and addenda prepared by                                        **PCI Architecture**

hereinafter called the "Architect" or "Owner's Authorized Agent", and all other documents evidencing the contract between the Owner and the Contractor,
all of which documents, signed by the parties thereto or identified by the Architect or Owner's authorized agent, form a part of the Contract between the
Contractor and the Owner dated    **December 5, 2000** , (hereinafter referred to as the "Contract Documents"), and are hereby incorporated by
reference and become a part of this Agreement. The Contract Documents shall be made available to the Subcontractor upon his request prior to the
execution of this Agreement and at any time thereafter during the course of the Work.

ARTICLE II.    *The Work.*  Subcontractor agrees to furnish, provide, and install all labor, materials, and equipment, and whatsoever else may be required
to fully do, perform, and complete, and will complete without exception, in a neat, first-class, good, and workmanlike manner, to the satisfaction of the
Contractor and of the Architect and the Owner, the following described work:

> See Attachment "A", entitled "General Requirements".
> See Attachment "B", entitled "Scope of Work".
> See Attachment "C", entitled "List of Drawings".
> See Attachment "I", entitled "Insurance Requirements".
> See Attachment "S" entitled "Design Services".
> See Attachment "T" entitled "Massachusetts Tax Obligations".

(the "Work").

ARTICLE III.    *Time for Completion:*  Time is of the essence in the execution of the Work and the Subcontractor agrees to commence and complete the
Work in accordance with the time limits stated in the Contract Documents and such schedule as the Contractor may furnish (the "Progress Schedule").
Within five working days of notification by the Contractor, the Subcontractor shall begin the Work and shall prosecute it until completion and without
pause. He shall be held responsible for maintaining the pace set by the Contractor and shall not delay the former or any of the former's other Subcontractors
in any way from completion of the Project. Such delay, unless due to conditions beyond the control and without any fault of the Subcontractor, shall be
chargeable to the Subcontractor, at an amount equal to the charges or penalties that may be assessed against the Contractor by the Owner plus all other costs
to Contractor arising out of such delay.

(a) Should the Subcontractor be obstructed or delayed in the prosecution or completion of the Work by the act, neglect, delay or default of the
Contractor or the Architect, the Owner, or any other Subcontractor employed by the Contractor or Owner upon the work, or by any damage which may
happen by fire, lightning, earthquake, cyclone, or other similar Natural Disasters, then the time fixed for completion of the Work may be extended for a
period equivalent to the time lost by reason of any of the causes aforesaid (the time extension so allowed shall not exceed the time extension allowed by the
Owner to the Contractor) but no such allowance shall be made unless a claim therefore be presented in writing to the Contractor within forty-eight (48)
hours, Saturday and Sunday excluded, of the occurrence of each delay. No charges shall be made by the Subcontractor for storage of materials, tools, and
equipment on the work, and no claims shall be made by the Subcontractor for damages for any such delay or cessation of the Work.

(b) If as a result of any strike, lockout, lightning, earthquake, cyclone, or other similar Natural Disasters, or any other causes beyond its control, the
Contractor is obstructed or prevented from performing any work on the Project and considers it inadvisable to receive materials therefore, then the
Subcontractor shall, upon notification from the Contractor, cease deliveries to and performance of any Work hereunder at the Project until such time as in
the opinion of the Contractor, the conditions are such that it is advisable to resume operations on the Project. Subcontractor hereby agrees to and shall
resume delivery of the materials and performance of the Work as required by written notification to it by the Contractor, no claim for damages shall be made
by either party hereto on account of any cessation of the Work for the causes aforesaid.

(c) The Subcontractor agrees that it will employ at the Site a foreman who shall have full authority to act for the Subcontractor, and further agrees that
such foreman shall attend all regularly scheduled job meetings and be available at all times during the course of the Work for consultation with
representatives of the Contractor. It is agreed that such foreman shall, at all times, be acceptable to the Contractor, the Owner, and the Architect, and shall
be available for the duration of the Project unless he ceases to be on the Subcontractor's payroll.

(d) Subcontractor shall maintain sufficient crew size and manpower to meet the requirement of the Progress Schedule. Subcontractor will, on a daily
basis, review with his crew the work plan to be followed so as to avoid delay in completion of the work, and to assure compliance with the Progress
Schedule, as the same may from time to time be revised.

ARTICLE IV.    *Payment Provisions:*  The Contractor agrees to pay the Subcontractor for the performance of this work the sum of

**Three Hundred Ninety Seven Thousand Seven Hundred Ten Dollars.................................... ($397,710.00)**

subject to additions and deductions for changes as may be agreed upon in writing subject to a retainage of  10%  of the amount requisitioned by the
Subcontractor. Prior to commencement of the Work, Subcontractor shall submit to Contractor a Schedule of Values



for the Work, in form acceptable to Contractor. The Schedule of Values shall itemize the dollar value of each category of Work and shall provide a complete list of all material suppliers and Subcontractors of the Subcontractor, along with the value of the materials and/or work to be supplied thereby. The Schedule of Values shall be agreed upon prior to any progress payments being made, and will be the basis of progress payments unless it is found to be in error.

(a) All requisitions must be in the Contractor's office by 4:30 PM the 25th day of the month, for work completed through the 30th day of the month. Requisitions received by Contractor after the day and time set forth will be held until the following month without action.

(b) The Subcontractor's monthly requisitions shall (i) be submitted on AIA Forms G-702 and G-703 (or a computerized spread sheet providing the information required under, and in a format similar to, AIA Form G-703), which shall include the name and address of each of Subcontractor's subcontractors and suppliers along with a description of the material, labor, and/or equipment supplied and its value, (ii) include a separate listing of all material and equipment supplied from Subcontractor's inventory with specific items or types of material or equipment exceeding $1,000 in value itemized individually, and (iii) if such requisition contains a request for payment for materials or equipment stored off of the Site, evidence of the purchase and storage thereof, transfer of title documents and evidence of insurance, all in form and substance acceptable to Contractor and Owner.

(c) The Subcontractor shall timely pay for all labor and materials used in or in connection with the Work, and shall, with each requisition, submit evidence satisfactory to the Contractor that all indebtedness connected with the Subcontractor's Work has been satisfied and that all Subcontractor's employees subcontractors and suppliers have been paid. Such evidence shall include without limitation, (I) a fully completed payroll affidavit in the form employed by the Subcontractor for all Subcontractor's employees who have worked on the Project during the period covered by the requisition and (ii) a provided as Exhibit B, signed by each of Subcontractor's employees who have worked on the Project during the period covered by the requisition and (ii) a fully executed and notarized "Waiver of Liens" in the form provided in Exhibit C from Subcontractor and each of Subcontractor's suppliers and subcontractors. Contractor specifically reserves the right (iii) to make payments on requisitions submitted by Subcontractor in the form of dual payee checks, payable to Subcontractor and its employee, supplier or subcontractors, or (iv) to make such payments directly to Subcontractor's employee, supplier and subcontractors, and reduce the amount owed to Subcontractor by the amount of such payments, provided, however, that nothing contained in this Agreement shall be deemed to create a direct contractual or employment relationship between Contractor and any of Subcontractor's employees, subcontractors or suppliers or an obligation on the part of Contractor to make payments thereto.

(d) The submission of the documents and information described in subsections (b) and (c) in form and substance acceptable to Contractor, shall be a condition precedent to the issuance of any payment.

(e) No Final Payment shall be due Subcontractor until it has delivered, in form and substance acceptable to the Contractor and the Owner, all record drawings, warranties, and manuals relating to the Subcontractor's Work which are required to be submitted by the Contractor to the Owner.

(f) No certificate given or payment made under this Agreement or the Contract between the Owner and the Contractor, shall be evidence of the Subcontractor's performance of it's obligations under this Agreement, either wholly or in part, and no such certificate or payment shall be construed to be acceptance of defective work or improper materials. Final payment shall be due when the Work is fully completed and performed in accordance with the Contract Documents. Final Payment has been received by the Contractor from the Owner, and the Subcontractor has satisfied all of the requirements of this Article IV.

ARTICLE V. *Safety.* The Subcontractor shall be responsible for all safety precautions, which may be necessary or appropriate in connection with its performance of the Work. The Subcontractor agrees to comply fully with all local, state and federal ordinances, regulations, and laws; all safety and work regulations instituted by the Contractor for this particular Project; and to report all accidents to the Contractor's Project Superintendent within two (2) hours of the occurrence thereof. The Subcontractor shall provide safe working conditions for its employees and for all others on the Project whose duties necessarily require them to be in, on, or about the area where the Work is working. All employees of the Subcontractor shall wear hard-hats and proper footwear. The Contractor's Project Superintendent may remove anyone found in violation of any of these provisions from the job site. The obligations of the Subcontractor as to safety as required by this Article are additional and supplementary to the other safety precautions which may be necessary or appropriate in connection with the performance of the Subcontractor's Work and for which safety precautions the Subcontractor is responsible. The Subcontractor hereby agrees to comply fully with the construction safety provisions of the Contract Work Hours Standards Act of 1962, as amended, The Occupational Safety and Health Act of 1970, as amended, and any comparable state laws where the Project is being carried out. The Contractor believes in and stresses a good safety program. Any and all costs incurred by Contractor to correct unsafe conditions, which are Subcontractor's responsibility, will be charged to Subcontractor.

Subcontractor shall supply to Contractor a Material Safety Data Sheet ("MSDS") for any hazardous chemicals or materials brought to the Site. Subcontractor will not bring to, or store at the site, any hazardous material, unless (i) a MSDS has been filed with the Contractor and is in the Job Site Chemical Handbook maintained in the Contractor's on-site office; (ii) is clearly labeled; and (iii) is stored and used in compliance with all applicable laws, regulations, and safety precautions. Contractor reserves the right to refuse delivery to the Site of hazardous material, or suspected hazardous material, which does not comply with this Article and to have any such materials found on the Site removed at the sole cost and expense of Subcontractor.

ARTICLE VI. *Performance and Payment Bonds.* (Requirement for the furnishing of performance and/or payments bond(s), if any, are contained on Attachment hereto.)

ARTICLE VII. *Temporary Site Facilities.* (Requirements and terms concerning temporary site facilities, i.e., storage, sheds, water, heat, light, power, toilets, hoists, elevators, scaffolding, cold weather protection, ventilating, pumps, watchman service, etc. are contained on Attachment B hereto)

ARTICLE VIII. *Insurance.* The Subcontractor shall have a direct liability for the acts of his employees, agents, suppliers, and subcontractors. The Subcontractor shall carry insurance in the amounts and on the forms required by Attachment I hereto.

Prior to starting the Work, the insurance herein required shall be obtained from a responsible company or companies authorized to do business in the State in which the Project is located, and Subcontractor shall provide copies of the policies or certificates thereof acceptable to the Contractor.

The required insurance policies (except for Worker's Compensation) shall name Contractor as an Additional Insured on a primary basis (with Contractor's insurance policies being non-contributory), and shall contain a provision that coverages afforded under the policies will not be cancelled or not renewed until at least thirty (30 days) prior to written notice has been given to the Contractor. Subcontractor shall require all of its subcontractors providing labor and materials for the Work to provide the insurance required by Attachment I hereto, naming the Contractor as Additional Insured as provided above, and shall provide copies of the policies or certificates thereof to the Contractor.

ARTICLE IX. *Job Conditions:* Subcontractor agrees to exercise special care while working around other in-place construction and to repair any damage caused by Subcontractor's Work. Subcontractor will clean up on a daily basis all trash, debris, and material involved with the Work or created by the Subcontractor's employees, agents, suppliers, or subcontractors during the execution of the Work, and remove such trash and debris from the Site at its own expense. Subcontractor further agrees to secure and protect its Work and to be liable for any and all loss or damage of any kind which may happen to the Project (whether such loss or damage relates to the Subcontractor's work, the work of the Contractor or the work of other trades) at any time prior to final completion and acceptance thereof. Contractor shall not be responsible for such storage or safety of any materials, equipment or other items used by Subcontractors, nor shall Contractor be responsible for providing space for such storage at the Site or elsewhere. Should the Subcontractor fail to clean up all debris arising out of this Agreement in any way made or created by the Subcontractor, the Contractor shall have the right to perform this work and charge the cost of the same to the account of the Subcontractor.

ARTICLE X.   In addition to the foregoing provisions the parties also agree:

(1) The Subcontractor shall be bound to the Contractor by the terms of the Contract Documents and this Agreement; and assume toward the Contractor all the obligations and responsibilities that the Contractor, by those documents, assumes toward the Owner, as applicable to this Agreement.

(2) If the Owner, Architect, or Contractor rejects the Subcontractor's Work or the Subcontractor's Work is not in conformance with the Contract Documents, the Subcontractor shall promptly correct Subcontractor's Work, whether it has been fabricated, installed or completed. Subcontractor shall be

(3) To the fullest extent permitted by law, the Subcontractor shall defend, indemnify and hold harmless the Contractor, the Owner, and the Architect, and their agents and employees from and against all claims, damages, losses, and expenses, including, but not limited to attorneys' fees, arising out of or resulting from the performance of the Work, provided that such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease, death, false arrest, malicious prosecution, wrongful eviction, wrongful entry, advertising, injury, discrimination, libel, slander, invasion of privacy or false imprisonment, or to damage, destruction or loss of use of property, and (2) is caused in whole or in part by any negligent act or omission of the Subcontractor, any sub-subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, regardless of whether or not it is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce any of the rights or obligations of indemnity which would otherwise exist to any party or person described in this paragraph. The indemnification obligation of the Subcontractor under this Subsection 3 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under Worker's Compensation Acts, disability benefit acts or other employee benefit acts, and the Subcontractors shall procure and maintain contractual liability insurance covering its obligations under this Article X.

(4) The Subcontractor shall not assign or subcontract this Agreement or any amounts due or to become due hereunder in whole or in part without the written consent of the Contractor.

(5) The Subcontractor hereby guarantees the Work against all defects of materials and/or workmanship as called for in plans, specifications, and addenda, or if no guarantee is called for, then, a period of two years and one day from the date of total acceptance of the Contractor's work by the Owner.

(6) The Subcontractor shall provide Contractor with weekly progress reports of the Work, including the progress of materials or equipment under this agreement that may be in the course of preparation, delivery, or manufacture.

(7) The Subcontractor shall make any and all changes or deviations from the original plans and specifications without nullifying the original contract when specifically ordered to do so in writing by the Contractor. The Subcontractor prior to the commencement of this revised Work, shall submit promptly to the Contractor written copies of the cost or credit proposal for such revised work in a manner consistent with the Contract Documents. Subcontractor shall be entitled to receive no extra compensation for extra work, materials or changes or for any additional bond costs regardless of whether same was ordered by Contractor or any of his representatives unless a change order therefor has been issued in writing by the Contractor. If extra work was ordered by the Contractor and the Subcontractor performed same but did not receive a written order therefore, the Subcontractor shall be deemed to have waived any claim for extra compensation therefore, regardless of written or verbal protests or claims by the Subcontractor.

(8) The Subcontractor shall work with the Contractor and other Subcontractors whose work might interfere with the Subcontractor's Work and to participate in the preparation of coordinated drawings in the areas of congestion as required by the Contract Documents, specifically noting and advising the Contractor of any such interference, and cooperate with the Contractor in scheduling his work so as not to conflict or interfere with the work of others. Subcontractor shall promptly submit shop drawings, and samples, as required in order to carry on said work efficiently and at a speed that will not cause delay in the progress of the Contractor's work or other branches of the work carried on by other Subcontractors. Subcontractor shall be responsible for monitoring approvals of submittals and shop drawings to ensure that Contractor's schedule is maintained.

(9) The Subcontractor shall coordinate its work with the Work of the Contractor, the work of the other trades, and the contract drawings and specifications, and shall, at no additional cost, make modifications to its Work, schedule, and materials so as to provide for such coordination and to adapt to job site conditions. The Contractor shall have the right to determine and, if necessary, change the time, order and priority in which the various portions of the Work shall be performed.

(10) The Subcontractor shall comply with all Federal, State and local laws and ordinances applying to the building or structure and to comply and give adequate notices relating to the work to proper authorities and to secure and pay for all necessary licenses or permits to carry on the work as described in the Contract Documents as applicable to this Agreement.

(11) The Subcontractor shall comply with all Federal, State, and local tax laws, Social Security laws, and Unemployment Compensation Laws, Workmen's Compensation laws, and O.S.H.A. insofar as applicable to the performance of this Contract, and defend, indemnify and hold the Contractor harmless from any and all claims in any way relating to actual or alleged non-compliance of said laws and the applicable regulations thereunder.

(12) The Subcontractor hereby agrees that all work shall be done subject to the final approval of the Architect or Owner's authorized agent, and his decision in matters relating to artistic effects shall be final, if within the terms of the Contract Documents.

(13) The Subcontractor hereby agrees that the making of all payments by the Contractor, including retainages, due or alleged to be due to the Subcontractor, are and will be expressly contingent upon acceptance by Owner of all the Subcontractor's Work and prior receipt by the Contractor of like payment from the Owner for Subcontractor's Work and for all of Contractor's work. Subcontractor expressly accepts the risk that he will not be paid for Work performed by him, nor receive retainages, in the event that Contractor, for any reason whatsoever, including insolvency of Owner, is not fully paid by, nor receives all retainages from Owner. Subcontractor states and warrants that, for payment for work performed by him, including retainages, Subcontractor relies solely upon the credit and ability of the Owner and not of the Contractor. Subcontractor therefore agrees that prior acceptance of Subcontractor's Work by the Owner, prior payment by Owner to Contractor for work performed by Subcontractor, including retainages, and prior full payment by Owner to Contractor for all Contractor's work shall be an express condition precedent to any obligation for payment by Contractor to Subcontractor for any work performed, including retainages, by Subcontractor. Subcontractor further agrees that liability of Contractor's payment surety bond, if any, for payment to Subcontractor shall, in addition to any obligations or conditions precedent mentioned in said bond, also be subject to all conditions precedent mentioned herein.

(14) The Subcontractor agrees to cause all liens, attachments and/or claims arising out of the Work to be removed and discharged within ten (10) days of the filing thereof, and to indemnify and hold Contractor and Owner harmless from any and all claims made by any suppliers of labor and material and equipment incorporated into, or relating to, the Work. The Contractor may deduct from any amounts due or to become due to the Subcontractor any sum or sums owing by the Subcontractor to the Contractor, and in the event of any breach by the Subcontractor of any provision or obligation of this Subcontract, or in the event of the assertion by other parties of any claim or lien against the Owner, the Contractor, Contractor's Surety, or the premises upon which the Work was performed, which claim or lien arises out of the Subcontractor's performance of this Agreement, the Contractor shall have the right, but is not required, to retain out of any payments due or to become due to the Subcontractor an amount sufficient to completely protect the Contractor from any and all loss, damage or expenses therefrom, until the claim or lien has been adjusted by the Subcontractor to the satisfaction of the Contractor. This paragraph shall

... credit except exceeds the balance due, the Subcontractor agrees promptly to pay the difference to the Contractor, ... , including legal fees incurred by Contractor because of ...

(3) The Contractor may, at any time, terminate this Agreement for the Contractor's convenience and without cause. Upon receipt of written notice of such termination, the Subcontractor shall immediately stop the Work, follow all of Contractor's instructions regarding securing of the work and demobilization, and make its best good faith efforts to mitigate costs. Upon such termination, Subcontractor shall be entitled to be paid for, and Contractor's liability hereunder shall be limited to, the reasonable value of the Work performed by the Subcontractor prior to such termination and the reasonable costs of securing the Work and demobilizing.

ARTICLE XIII. The parties specifically agree that should the Contractor become civilly and/or criminally cited for the payment of fines or damages as a result of a violation of the Occupational Safety and Health Act of 1970 or of any similar State or Federal legislation, as a result of the conduct of the Subcontractor, then the Contractor will have the right as soon as the liabilities aforesaid are imposed or exposure to such liabilities becomes apparent, to summon the Subcontractor and the Subcontractor specifically agrees that he shall indemnify the Contractor, hold the Contractor harmless and shall undertake the defense of the Contractor with regard to any of the aforesaid Contractor's liabilities or threatened liabilities arising out of the action or inaction of the Subcontractor.

ARTICLE XIV. This Contract constitutes the entire agreement between parties hereto, and it is agreed that this Contract cannot be amended, modified or changed except as herein provided; and it is also agreed that the provisions of this Contract cannot be waived except in the same manner as is herein provided.

ARTICLE XV. This Contract shall be governed by the laws of the state in which the Project is located, without giving effect to the conflicts of law principals thereof.

IN WITNESS WHEREOF, these parties hereto have affixed their signatures and seals by their authorized agents.

Paquette Electric Co., Inc.

_Denise L Morency_ 10/4/01
(Seal)                (Date)

By: _John W Paquette_ President
Subcontractor              (Title)

PRO CON, INCORPORATED (Contractor)

Attest:

_Cynthia A Gosselin_ 10-8-01
(Seal)                (Date)

By: _Richard A Crane_ Vice President
(Title)

EXECUTED COPY SENT
10-8-01

ENTERED OCT 0 9 2001

Paquette Electric Co., Inc.
Residence Inn - North Dartmouth, Massachusetts
PCI #801069/Task #16010

ATTACHMENT "A"

### GENERAL REQUIREMENTS

The following listed work is part of this Subcontract Agreement but in no way excludes other requirements found in the Contract Documents or which can be reasonably inferred therefrom, all of which shall be deemed to be part of the Subcontractor's Work.

1.  Prior to commencing its Work, the Subcontractor SHALL CONDUCT A VISUAL INSPECTION OF THE SITE to become generally familiar with local conditions and to correlate on-site conditions with the Contract Documents. Subcontractor shall also make a careful analysis and comparison of the on-site conditions, the drawings, specifications and other Contract Documents relating to its Work. Should the Subcontractor discover any errors, inconsistencies or omissions in the Contract Documents it shall immediately report such discovery to the Contractor in writing. If the Subcontractor performs any Work knowing of such errors, inconsistencies or omissions prior to giving written notice thereof to the Contractor, it shall assume and pay all costs and expenses therefrom. Nor shall Subcontractor perform any Work knowing it to be contrary to any applicable laws, statutes, ordinances, building codes, rules or regulations without prior notice to Contractor and advanced approval by appropriate authorities, including the Contractor.

2.  It is the intent of this Agreement that Subcontractor provide a complete and finished system, properly tested, ready for operation, including necessary minor details and accessories required to make the Work complete, even though such items may not be expressly shown or specified in the Contract Documents.

3.  The Subcontractor shall be bound by the conditions and requirements of this Agreement and the Contract Documents.

4.  Subcontractor will supply a complete materials schedule listing all products to be used along with their order release date, factory acknowledge date, and expected delivery to Site dates, which will be updated weekly. Attached to said schedule shall be a listing of the full names, addresses and telephone numbers of all suppliers identified in said schedule.

5.  Subcontractor shall obtain detailed printed information from the manufacturer of equipment, which he is to provide for the proper methods

Paquette Electric Co., Inc.
Residence Inn - North Dartmouth, Massachusetts

of installation. All equipment shall be installed in strict accordance with the manufacturer's recommendations.

6. Subcontractor is solely responsible for providing and monitoring approvals of submittals and shop drawings to ensure that the Progress Schedule is maintained. Furthermore, he shall notify Contractor immediately in writing regarding critical delays in the submitted approvals process or delays in the delivery of material and/or equipment.

7. Subcontractor shall submit samples of all materials specified herein to Contractor prior to installation of same. Samples shall represent the full range of manufacturer's available colors and be clearly identified. Submittals and shop drawings shall be submitted in sets of six.

8. Subcontractor shall give full cooperation to other trades and shall furnish any information necessary to permit the work of all trades to be installed satisfactorily and with minimal interference or delay. If Subcontractor installs his Work before coordinating with other trades so as to cause interference with their work, he shall make necessary changes in his Work to correct the condition without extra charge. In areas where more than one trade is required to use common openings in beams, chases, shafts, etc., Subcontractor must plan and locate the positions of items of which are under the scope of this Agreement with items under the scope of other trades, in order that all items may be accommodated within the space available. Location and positioning shall be done prior to installation and to the satisfaction of the Architect and Contractor.

9. Quality of material and workmanship is of paramount concern. Any material or workmanship deemed to be substandard by Contractor will be removed and replaced with acceptable materials immediately, at no additional expense to the Owner or Contractor, and without delay to the overall Project Schedule.

10. All OSHA requirements are to be met. Safety is to be given first priority on the job site. It is the Subcontractor's responsibility to maintain safe conditions in the performance of his work. Subcontractor shall immediately correct any unsafe conditions observed by Contractor. If the unsafe condition is not corrected, Contractor may take necessary action to correct such condition. Any and all costs incurred by Contractor to correct unsafe conditions and costs for associated delays in work will be paid by Subcontractor immediately upon demand. A written safety program, written Haz Com and MSDS sheets and inventory are to be submitted to Contractor without delay. Weekly safety meetings are to be documented and such documentation to be submitted to Contractor on a weekly basis.

11. Use of field office and facilities will be limited to Project business only. Subcontractor will be required to use his own calling cards for any long distance calls.

2

Paquette Electric Co., Inc.
Residence Inn - North Dartmouth, Massachusetts

12. Subcontractor's foreman will prepare daily and weekly planners and furnish same to Contractor prior to the date(s) covered thereby, but at least on a weekly basis. The planners must include manpower projections, quantities and location of work, goals and deliveries. Daily meetings will be held on Site to review progress and the following days work.

13. No additional compensation will be authorized for cutting and patching work that is necessitated by ill-timed, defective, or non-conforming installations.

14. To the extent that the Contract Documents provide for a mutual waiver of consequential damages by the owner and the Contractor, the Contractor and the Subcontractor hereby waive claims against each other for consequential damages arising out of or relating to this Agreement, including, to the extent provided in the Contract Documents, damages for principal office expenses and the compensation of personnel stationed there; loss of financing, business and reputation; and for loss of profit. To the extent applicable, this mutual waiver applies to consequential damages due to termination by the Contractor or the Owner in accordance with this Agreement or the other Contract Documents. To the extent that the Contract Documents provides for the award of liquidated or other similar damages for delay, such damages shall be passed on to the Subcontractor to the extent that Contractor, in its sole discretion, determines that Subcontractor has contributed to the imposition of same.

15. Attendance at job coordination meetings is mandatory for all subcontractors. Meetings will be held on a regular basis; typically, once a week, or as work sequencing and scheduling requires. In attendance will be a representative of the office staff who coordinates the project and/or the field superintendent/foreman. Weekly meeting time will be set by Contractor.

16. Contractor shall have the right to review the qualifications of the Subcontractor's proposed superintendent/foreman and ask for a replacement, if in its opinion, the person does not meet the qualifications, which the Project will demand. No changes in Subcontractor's supervisory personnel shall be made without Contractor's prior approval.

17. Parking for workmen on the Project shall be limited to areas designated by Contractor. Access to the Site for workmen and delivery or removal of construction materials and/or equipment shall be made only from locations identified by Contractor, approved by the governing authorities and as acceptable to the Owner.

18. All equipment delivered to the site must be coordinated with Contractor's project superintendent or project manager no less than 48 hours prior to the anticipated delivery. ALL material delivered to the Site must be palletized, and delivery slips therefore shall be delivered to the

3

Contractor's project superintendent. Each Subcontractor shall designate a material handling foreman and/or clerk. Failure to do so will result in a material handling charge. Expedited delivery of equipment and material and on-site storage of same is encouraged. Location of storage trailers by Subcontractor shall be coordinated with Contractor.

19. All daily and final clean-up made necessary by the Work is to be performed by Subcontractor and done to the satisfaction of Contractor. Subcontractor is responsible for keeping its work area(s) clean and organized. It is Subcontractor's responsibility to clean up its debris at the end of each day and properly sort and place it in the appropriate refuse container. Refuse containers will not be provided for Subcontractor's use unless noted elsewhere in this Agreement.

20. Smoking will be allowed only in the area designed by Contractor. Alcohol and drug use will not be tolerated. Any person(s) found smoking in areas other than the designed smoking area, or using or being under the influence of alcohol or drugs, will be dismissed from the Project.

21. There will be absolutely no removal of any temporary shoring by Subcontractor unless authorized by Contractor.

22. Contractor will have a daily sign in sheet at the Site office. Subcontractor shall require all personnel to sign in and out each day.

23. All Subcontractor personnel will conduct themselves in a professional manner while on or about the Site. Shirts must be worn at all times and foul language will not be tolerated. Person(s) failing to comply will be dismissed from the Project.

24. Any and all deviations from, or modifications of, this Agreement must be authorized by Contractor, in writing, prior to implementation. Any work done without prior written authorization will not be considered for reimbursement.

25. All warranties, catalogs, record drawings and other closeout requirements must be complete and submitted to Contractor prior to Subcontractor making his request for final payment.

26. Subcontractor will supply a minimum of two (2) sets of record drawings upon the completion of the Work.

27. All punch list work shall be initiated and completed by Subcontractor within 48 hours from the issuance of a punch list by the Owner, Architect, or Contractor. Failure to do so will give Contractor the option to proceed with any unaddressed items at Subcontractor's expense.

4

Paquette Electric Co., Inc.
Residence Inn - North Dartmouth, Massachusetts

28. Subcontractor shall complete any warranty work within 24 hours of when it is identified. A written field report identifying all conditions found at the site must be filed in this office following any warranty work.

29. Subcontractor shall not change or tamper with heat, HVAC, or thermostat controls, whether temporary or permanent, without permission from Contractor.

30. No electric welders will be allowed on the Site, only gas welders. If, for any reason, electric welders must be used, then Subcontractor must supply his own generator for its power source. Use of the job site temporary power or permanent power for an electric welder will not be permitted.

31. All software and equipment supplied for this Project shall be year 2000 compliant and Subcontractor shall be responsible for providing documentation evidencing such compliance prior to installation.

32. PCI Backcharge Policy: Contractor depends on its subcontractors and suppliers for competitive prices at bid time and a positive profitable win/win relationship during the course of the Project as well as the warranty period. However, if Subcontractor acts irresponsibly and disregards requests to cooperate with Contractor on rectifying coordination problems, scheduling issues, etc., or fails to fulfill the terms and intent of this Agreement, then Contractor reserves the right to backcharge Subcontractor for costs incurred as a result of his failure to comply with his obligations under this Agreement.

5

Paquette Electric Co., Inc.
Residence Inn - North Dartmouth, Massachusetts
PCI # 801069/Task # 16010

## ATTACHMENT "B"

### SCOPE OF WORK

The following listed items of work are included but not limited to:

1. Furnish all labor, materials and equipment to complete design/build electrical and fire alarm systems for the 96 Room Residence Inn, North Dartmouth, Massachusetts.

2. Plans must be stamped by a professional engineer registered in the State of Massachusetts.

3. All work shall be in strict accordance with the State of Massachusetts, BOCA, State Fire Safety Codes, NFPA, Health Code, NEC, UL, NEMA, OSHA and the local utility company.

4. Permits and fees are included in this scope of work.

5. Shop drawings and submittals are part of this scope of work and must be issued in a timely manner so as not to impact the construction schedule.

6. All work must be acceptable to the Owner, Architect, Engineer and General Contractor.

7. ~~Installation~~ Electrical Connections of all owner furnished equipment is included in this scope of work.

8. Fire alarm system to be addressable per the Marriott's fire alarm design criteria/Life Safety Codes and NFPA. Guestrooms with fireplaces will have $CO_2$ detectors.

9. Owner will purchase light fixture types D-04, D-05, D-06, D-07, D-15, D-18, and D-19. The labor to install the lights remains part of this scope.

10. Site lighting and power for building, monument/pylon signage is not included.

11. Fire caulking approved by the Architect to be used at all penetrations through a fire rated partition or floor, at locations where boxes are located on opposite sides of a rated wall assembly being within 24" horizontal, then the boxes shall be wrapped with approved fireproof compound provided and installed by this subcontractor.

July 27, 2001
Paquette Electric Co., Inc.
Residence Inn - North Dartmouth, Massachusetts
PCC #801069/Task #16010

12. Coordination of electrical work with all related trades is part of this scope.

13. Secondary service from the transformer to the electrical room includes one active, one spare and grounding of the transformer. ✸ Note: Per our Scope of work All Primary and Secondary Conduits And wire are based on 100

14. Plans and specifications are to be used for a design guide only, specifications included are as follows: 01010, 16050, 16051, 16060, 16071, 16075, 16120, 16130, 16139, 16140, 16280, 16410, 16420, 16440, 16460, 1 "B" light fixture schedule.

15. Cleanup of this subcontractor's own debris is part of this scope and must be done on a daily basis.

**END OF ATTACHMENT "B"**

16. Paquette Electric's   Scope - of - Work   date  6/1/2001

# ACORD. CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YY)
08/20/2001

| PRODUCER (360)928-7771        FAX (860)928-7144 | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|

Gerardi Insurance Services Inc
One Insurance Plaza
16 Pomfret Street
Putnam, CT 06260

| INSURERS AFFORDING COVERAGE | |
|---|---|
| INSURED Paquette Electric Co Inc    16012 | INSURER A: Peerless Insurance Company |
| 368 Killingly Rd | INSURER B: |
| P O Box 159 | INSURER C: |
| Pomfret Center, CT 06259    80691601D | INSURER D: |
| | INSURER E: |

## COVERAGES

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY [X] COMMERCIAL GENERAL LIABILITY [ ] CLAIMS MADE [X] OCCUR | CBP9432622 | 07/29/2001 | 07/29/2002 | EACH OCCURRENCE | $ 1,000,00 |
| | | | | | FIRE DAMAGE (Any one fire) | $ 100,00 |
| | | | | | MED EXP (Any one person) | $ 10,00 |
| | | | | | PERSONAL & ADV INJURY | $ 1,000,00 |
| | | | | | GENERAL AGGREGATE | $ 2,000,00 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: [ ] POLICY [ ] PRO-JECT [ ] LOC | | | | PRODUCTS - COMP/OP AGG | $ 2,000,00 |
| A | AUTOMOBILE LIABILITY [X] ANY AUTO [ ] ALL OWNED AUTOS [ ] SCHEDULED AUTOS [ ] HIRED AUTOS [ ] NON-OWNED AUTOS | BA9432822 | 07/29/2001 | 07/29/2002 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,00 |
| | | | | | BODILY INJURY (Per person) | $ |
| | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | GARAGE LIABILITY [ ] ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | OTHER THAN EA ACC AUTO ONLY: AGG | $ |
| A | EXCESS LIABILITY [ ] OCCUR [ ] CLAIMS MADE [ ] DEDUCTIBLE [ ] RETENTION $ | CU9432922 | 07/29/2001 | 07/29/2002 | EACH OCCURRENCE | $ 10,000,00 |
| | | | | | AGGREGATE | $ 10,000,00 |
| | | | | | | $ |
| | | | | | | $ |
| | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY | WC9432822 | 07/29/2001 | 07/29/2002 | [X] WC STATU-TORY LIMITS [ ] OTH-ER | |
| | | | | | E.L. EACH ACCIDENT | $ 100,00 |
| | | | | | E.L. DISEASE - EA EMPLOYEE | $ 100,00 |
| | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,00 |
| | OTHER | | | | | |

DESCRIPTION OF OPERATIONS/LOCATIONS/VEHICLES/EXCLUSIONS ADDED BY ENDORSEMENT/SPECIAL PROVISIONS
RE: Residence Inn, North Dartmouth, MA
Pro Con Construction is included as additional insured

| CERTIFICATE HOLDER | ADDITIONAL INSURED; INSURER LETTER | CANCELLATION |
|---|---|---|
| Pro Con Construction P O Box 4430 Manchester, NH 03108 | | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL ENDEAVOR TO MAIL 10 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE Edward Desaulnier |

ACORD 25-S (7/97)                                                                 ©ACORD CORPORATION 198