UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-11578PBS

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY<br>As Subrogee of Hodan Properties, Inc.<br><br>    Plaintiff,<br>vs.<br><br>FIRE SYSTEMS, INC.,<br>FIRE SUPPRESSION SYSTEMS OF NEW ENGLAND, INC..,<br>~~PRO CON, INC.., and~~<br>BRIERE & PAQUETTE, INC. f/k/a PAQUETTE ELECTRIC CO, INC.<br><br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF EMERGENCY MOTION BY DEFENDANT FIRE SUPPRESSION SYSTEMS OF NEW ENGLAND, INC. TO PRECLUDE EXPERT TESTIMONY AS A RESULT OF FAILURE TO DISCLOSE EVIDENCE AND SPOLIATION OF THAT EVIDENCE

Now comes the defendant, Fire Suppression Systems of New England, Inc. and respectfully requests that this Honorable Court preclude the plaintiff, Fireman's Fund Insurance Company, and co-defendant, Fire System, Inc.'s experts from offering testimony in this matter against FSSNE. As grounds therefore, the defendant states that each of these parties and their witnesses were aware that the sprinkler fitting which is at the heart of this case was retained after the loss and were made available for inspection

by these parties' experts. Despite multiple rules requiring disclosure, neither of them ever disclosed the existence of this tangible and highly relevant forensic evidence.

The retention of these pipes and fittings, which constitute material evidence critical to a proper analysis by FSSNE of the cause of the loss at issue, was never disclosed to FSSNE and only recently came to light at the deposition of Tom Klem, Fire Systems, Inc.'s ("FSI") expert witness, on August 16, 2006. Both the plaintiff's expert, Mr. Papetti, and FSI's expert opine that this loss was caused when a sprinkler fitting froze and cracked, tripping the dry pipe system. Trial is scheduled to begin in three weeks and this Court ruled on June 1, 2006, that discovery would not be reopened. The failure to disclose this material evidence has sweeping repercussions to this defendant's ability to evaluate all of the evidence, to prepare all defenses and to consider all possible explanations for this two million-dollar plus loss. Because the failure is inexcusable and highly prejudicial and cannot be overcome prior to trial, preclusion of all expert testimony as to FSSNE is warranted.

I.  Factual Background

This is a subrogation case brought by Fireman's Fund Insurance Co., (hereinafter "Fireman's Fund") to recover for water loss damages sustained on January 19, 2003 at a newly constructed Marriott Residence Inn in Dartmouth, Massachusetts. The Inn was owned by Hodan Properties, a Marriott franchisee, and a Fireman Fund's insured. The loss occurred when water flooded from a 'dry' sprinkler system installed in the attic of the three-floor hotel by the moving party, FSSNE. The dry system is specifically designed for attic installations. Whereas a wet system maintains water under pressure throughout the line, the dry system stays pressurized by air. When the air pressure drops,

as would happen if a sprinkler head were activated by heat or a fitting gives way, then that air decompression triggers a valve to send water through the dry line (also known as "tripping the dry system").

After FSSNE installed the dry system in the attic and the more familiar wet system throughout the heated portions of the hotel, the system was inspected, and tested. These function tests involved recording the normal air and water pressures within each system at the beginning of the test, the air pressure at the trip point, the time required to trip the valve through the test connection, the time for water to reach the test outlet and the proper operation of the alarm devices. The pipes are also tested for their ability to hold hydrostatic pressure of 200 p.s.i. for 2 hours. These tests were performed with satisfactory results before FSSNE concluded its work for Hodan Properties.

After the components of the system were installed by FSSNE, defendant Briere & Paquette, Inc., f/k/a Paquette Electric, Inc. (hereinafter "Paquette Electric") was hired as the electrical subcontractor to wire and connect the various system components, including the wiring of the pressure alarm switch and low air switch for the dry system. These components were in turn connected to modules in a sprinkler control room and from there were connected to a master panel. The panel is designed to alarm if the dry system or wet system is tripped or if pressures in either system bleed down. The system also automatically sends an alarm to the local Fire Department under certain conditions.

In April of 2002, after FSSNE and Paquette had each completed their work, another company, Tech Controls, Inc., not a party here, was hired to do an acceptance test on the entire system. The acceptance testing required the participation of a technician from FSSNE and Paquette Electric and was witnessed by the Fire Chief. The system

passed, the Fire Chief signed off and a Certificate of Occupancy was issued by the Town. The hotel opened for business in May of 2002.

FSI was hired by Hodan to inspect and test the fire suppression system for the hotel. This testing and inspecting must be done pursuant to National Fire Protection Association ("NFPA") guidelines. On November 20, 2002, FSI performed the first of what were to be quarterly inspections of the fire protection system. Test Reports indicated that devices were tested and operated as required as did an Inspection Tag hanging on the system.

On January 16, 2003, *three days before the loss*, FSI conducted a second quarterly inspection.[1] There is considerable dispute about what FSI did or did not do during this second inspection. On January 19, 2003, the fitting at issue allegedly gave way and a portion of the third floor was flooded. It is not disputed that after the loss at issue it was discovered that the low air pressure switch and the water flow alarm that had earlier passed all tests were now incorrectly wired. As a consequence, the low air pressure switch did not send out a trouble signal and the water flow alarm did not send an alarm to the panel as well as an alarm to the Fire Department.

Had the alarms functioned, the loss might have been averted or the damages may have been substantially reduced. When the Dartmouth Fire Department responded they shut off the water supply to the entire fire protection system. Pipes in the attic 'dry' system were found to be frozen with water in many locations including at the site above the room where water had been observed by the hotel guest. The experts, Klem and

---

[1] It is unclear why this quarterly inspection was undertaken less than two months after the previous inspection.

Papetti, allege that the loss occurred when water collected in a fitting, froze and caused the fitting to crack, thereby tripping the dry system.

II.     Procedural Posture

Fireman's Fund purportedly paid for the loss and brought suit in 2004. Fireman's Fund sued the installer of the system (FSSNE), the electrician that wired the components (Paquette Electric), the company that did the two inspections -- including significantly, the inspection just days before the loss -- (FSI) and the general contractor on the project, Pro Con, Inc. Pursuant to F.R.C.P. 26(a), each party made automatic disclosures.

On December 30, 2004, co-defendant Fire Systems, Inc. designated Thomas J. Klem, as an expert it intended to call to opine about the cause of the loss and provided several expert reports authored by Mr. Klem. In each of the reports, Klem lists all of the evidence reviewed and material relied upon for his opinions and conclusions.

On January 5, 2005, Fireman's Fund designated Richard R. Papetti, P.E., as an expert it intended to call to opine about the cause of the loss and likewise provided two expert reports from him. He also listed the materials reviewed and relied upon by him for his opinions and conclusions.

To some degree or another, each expert opines that the likely cause of the loss was the manner in which the dry system pipes were installed, which FSSNE denies. They further opine that a fitting was clogged with ice. That fitting was located above a guest room on the third floor. That guest was the first person to notice water gushing into his room from above and pulled the manual pull station outside his room.

A Pre-Trial Hearing was held before this Court on June 1, 2006. At that time the parties listed the remaining depositions which included the deposition of Klem. Klem sat

for deposition on August 16, 2006. Pursuant to the deposition subpoena, Klem produced his file to FSSNE. In the file was a pre-suit letter dated October 13, 2003, to Klem from Michael C. McDonnell, Jr., acting on behalf of FSI. In it, Mr. McDonnell agrees to engage Klem to act as an expert in this matter and enclosed the expert report of Papetti (on behalf of Fireman's Fund). The letter then reads as follows:

> "Lastly, it has been indicated to us that Hodan Properties [the owner/franchisee] **has in their possession a portion of the broken sprinkler pipe and/or joint/valve**, and same will not be available for inspection until after the 27th of this month [October 2003], and therefore **we would ask that you make arrangements with the expert on behalf of third party property owner, namely Richard Papetti to inspect this piece of piping** together.
>
> "I further ask your advises as to whether or not Massachusetts has a 'Chain of Custody' rule and if so, please research as to how the piece of sprinkler/pipe became in the possession of Hodan Properties."

Prior to August 16, 2006, defendant FSSNE was never informed by either Fireman's Fund or FSI that a portion of the broken sprinkler pipe had been retained and had been made available to their experts for examination. FSSNE had requested a site inspection, which took place in December of 2004. At no point during that inspection, attended by both Klem and Papetti, did anyone inform FSSNE or its expert that the fitting at issue was available for inspection. The existence of this broken pipe and or joint/valve, which lies at the very center of this disputed loss, was known to both Fireman's Fund and FSI from the outset and yet was never disclosed until the letter quoted above turned up in Mr. Klem's file at his recent deposition.

    III.    <u>Argument</u>

The issue presented is whether both Fireman's Fund and FSI were obligated to disclose the existence of the broken fitting that they asked their experts to inspect and if so, whether the sanction of preclusion is warranted. For the reasons that follow, FSSNE

respectfully suggests that the conduct of these parties in failing to disclose material evidence as required has so prejudiced FSSNE that preclusion is the only remedy that can level the playing field.

F.R.C.P. 26(a)(1) requires that every party:

> "must, without awaiting a discovery request, provide to other parties: . . . (B) a copy of, or a description by category and location of, all documents, data compilations, and <u>tangible things</u> that are in the possession, custody or control of the party and that the disclosing party may use to support its claims or defenses." (emphasis added).

F.R.C.P. 37(c)(1) provides as follows:

> "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion, any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure."

The sanctions available under F.R.C.P. 37(b)(2)(A)(B) and (C) include the issuance of an order that certain facts be taken as established, or an order prohibiting the disobedient party from presenting designated claims or defenses, or that judgment enter against the disobedient party.

> A. <u>Fireman's Fund and FSI were each under a duty to automatically disclose the existence of the broken pipe and related dry system components to FSSNE from the outset of this litigation.</u>

Fireman's Fund and FSI each knew prior to the filing of the Complaint in this case that portions of the piping system at issue had been retained by the property owner, Hodan Properties, and were available for inspection. F.R.C.P. 26(a) mandates the

disclosure of 'tangible things' in the possession, custody or control of a party that may be relevant to claims and defenses. As of October 27, 2003, Hodan Properties (and by extension Fireman's Fund) had possession of "a portion of the broken sprinkler pipe and/or joint/valve" that had been removed after the loss. These pieces were known by Fireman's Fund and FSI to be potential sources of significant information to the investigation of the cause of the loss as evidenced by Mr. McDonnell's request that FSI's expert inspect these items. This forensic evidence, the very piping components directly implicated by the case, are precisely the sort of 'tangible things' that the automatic disclosure rule contemplates.

The existence of the fitting was never disclosed to any of the other defendants. This may not be particularly detrimental to Paquette Electric or ProCon, however, it is FFSNE that installed the very fitting that was in existence and which is alleged to have failed because it froze. Notwithstanding the automatic disclosure requirements of F.R.C.P. 26, FSSNE only learned of the existence of this joint valve on August 16, 2006 during the deposition of defendant's expert witness, Mr. T.J. Klem. Both Mr. Klem and plaintiff's expert, Richard R. Papetti, P.E., were provided access to portions of the piping that were replaced after the loss.[2] At no time prior to August 16, 2006 did either the Fireman's Fund or FSI or either of their experts so much as hint at the fact that the fitting had been made available to them for inspection and testing.

After discovering the existence of the fitting, FSSNE immediately inquired of plaintiff where the fitting was. Plaintiff has indicated that they have asked Papetti, the

---

[2] Klem chose not to inspect the fitting. As he disclosed in his deposition, he did not think it was necessary, even though his client asked him to do so and even though he could not know that it was not relevant without first inspecting it. Klem is an experienced and seasoned investigator and expert witness.

last person to have custody of the fitting, whether he can locate it. To date, the fitting has not been located.

Had FSSNE been put on notice of the existence of this important tangible evidence, it would certainly have conducted significant discovery. FSSNE would likely have hired a metallurgist to inspect and test the fitting.[3] The results of that testing may then have been used to support or refute various theories of liability in this case. For example, one area of important difference in the parties' respective theories of how the loss occurred centers on the timing of when and how water may have entered the dry system. Expert forensic evaluation and testing by FSSNE may have aided in addressing that issue. Fireman Fund's and FSI's failure to comply with Rule 26's automatic disclosure requirements has prevented FSSNE from conducting a thorough analysis of its defenses.

### B.  Preclusion of The Experts Is the Appropriate Remedy

The exclusionary rule in F.R.C.P. 37(c)(1) was added in 1993 and "gave teeth to a significantly broadened duty to supplement Rule 26 disclosures by making mandatory preclusion 'the required sanction in the ordinary case.'" Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 19 (1st Cir. 2001)(quoting Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir. 1998). This case is somewhat unusual in that it is not the expert's report that was never disclosed but instead the lack of candor involving a critical piece of physical evidence to which this movant's opponent's experts were provided access. Still, Rule 37(c) specifically refers to other remedies that the court may invoke in order to cure a

---

[3] FSSNE has requested that the pipe pieces again be located and it is as yet unclear whether Hodan Properties or FSI's expert continues to hold the parts that were identified in FSI's October 13, 2003 letter. But regardless, it is far too late now to engage a new expert whose opinions could implicate as yet un-joined parties.

particular discovery abuse, including issue preclusion. At the very least, Messrs. Klem and Papetti should be precluded from offering any testimony that the dry system piping or any of its components caused or contributed to cause the loss at issue. It would simply be unfair to permit these experts to blame the piping system installed by FSSNE for the loss when the parties engaged by them utterly neglected to disclose the existence of this evidence notwithstanding that they had directed their own experts to examine these materials and to consider 'chain of custody' issues.

### C. Spoliation Provides Further and Independent Grounds Warranting Preclusion.

Upon learning just this mid-August that the parts installed by FSSNE and which purportedly failed had been retained after the loss, counsel immediately inquired as to their whereabouts. They have not been located. Thus, not only have two parties to this case known about and been provided exclusive access to key evidence, that evidence is now lost and may never be found.

The goals of the spoliation doctrine "are to rectify any prejudice the non-offending party may have suffered as a result of the loss of evidence and to deter any future conduct, particularly deliberate conduct, leading to such loss of evidence." Collazo-Santiago v. Toyota Motor Corp., 149 F.3d 23, 28 (1st Cir. 1998). Exclusion may be the appropriate remedy even where there has been no showing of bad faith. "Fairness to the opposing party therefore plays a substantial role in determining the proper response to a spoliation motion, and punishment for egregious conduct is not the sole rationale for the most severe sanction of exclusion. " Trull v. Volkswagon of America, Inc., 187 F.3d 88, 95 (1st Cir. 1999).

District Courts in the First Circuit have considered the following five factors in determining whether sanctions for spoliation of evidence are warranted: "(1) whether the defendant was prejudiced as a result of the destruction of evidence; (2) whether the prejudice can be cured; (3) that practical importance of the evidence; (4) whether the plaintiff was in good faith or bad faith; and (5) the potential for abuse if the evidence is not excluded." Assurance Co. v. Ware, 145 F.R.D. 281, 283 n.3 (D.Me. 1993); see also Headley v. Chrysler Motor Corp., 141 F.R.D. 362, 364-65 (D.Mass. 1991).

Applying these factors to this case, and bearing in mind that fairness to FSSNE plays a substantial role in deciding the issue, preclusion here is warranted.

FSSNE has been severely prejudiced by the inability to examine, analyze and test the very pipes that purportedly failed and caused this loss. Expert analysis of the pipes might very well have shed light on how the pipes failed, when they failed and the extent to which water may have, or may not have, been present in the dry-pipe system prior to the loss. The plaintiff alleges in part that these pipes were improperly installed and that the improper installation caused or contributed to cause the loss. The spoliation of the pipes and parts at the center of this dispute, the same parts made available to the other parties' experts, prejudices the ability of the FSSNE, the installer of the system, from defending against claims of negligent installation.

The prejudice resulting from this spoliation cannot be cured. There is no evidentiary substitute for the very piping parts that FSSNE installed at the subject location. Even if the parts were to surface now, it would still be too late. Discovery is complete. Experts have been retained and have formed and disclosed their opinions. Trial is imminent. These pipes should have been made available to this defendant from

the outset. Without them, FSSNE is hindered in its ability to defend the installation work that it did. The practical importance of this evidence is underscored by the fact that plaintiff's expert was rightly concerned about maintaining proper 'chain of custody.' It is hard to imagine any physical evidence more important to the resolution of the instant dispute than these missing parts.

FSSNE does not assert bad faith on the part of Fireman's Fund or FSI. While each knew about this critical evidence and each made it available to their experts for inspection and testing, there is no indication at this time that loss of the materials was deliberate. And despite that each failed in their obligations to disclose this evidence, neither appears to have acted in bad faith. But regardless of whether the failure was deliberate or negligent, it is appropriate to weigh prejudice more heavily than bad faith in deciding whether to impose sanctions. See Trull, 187 F.3d 88, 95 (1st Cir. 1999). As the First Circuit has noted, "our case law does not require bad faith or comparable bad motive . . . bad faith is not essential. If such evidence is mishandled through carelessness, and the other side is prejudiced, we think that the district court is entitled to consider imposing sanctions, including exclusion of the evidence." Sacramona v. Bridgestone/Firestone, Inc., 106 F.3d 444, 447, 446 (lst Cir.1997). What matters most to FSSNE and litigants like it is that the remedy address the prejudice and unfair disadvantage that attains when material evidence is not made equally available.

IV.   Conclusion

As installer of this piping system here charged with negligent installation of that system, the potential evidentiary value of the pipes and/or valve that gave way is substantial. For whatever reasons, the existence of these saved parts and the fact that

expert witnesses were permitted to inspect them were never disclosed to this party. Now that these parts are missing, whatever slim opportunity may have remained to cure the non-disclosure (for example by reopening discovery) is gone. The only fair way to now counter the prejudice to FSSNE is to preclude Messrs. Klem and Papetti from testifying against FSSNE.

WHEREFORE, FSSNE respectfully requests that this Honorable Court issue an ORDER precluding Messrs. Klem and Papetti from testifying against FSSNE.

The defendant,

Fire Suppression Systems of
New England, Inc.
By its attorneys,

/s/ Peter E. Montgomery
Jocelyn M. Sedney, BBO# 552115
Peter E. Montgomery, BBO#632698
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100

Dated: August 28, 2006