UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, )<br>As Subrogee of Hodan Properties, Inc. )<br>    Plaintiff )<br>)<br>Vs. )<br>)<br>FIRE SYSTEMS, INC., )<br>FIRE SUPPRESSION SYSTEMS OF )<br>NEW ENGLAND, INC., )<br>PRO CON, INC. )<br>and BRIERE & PAQUETTE, INC. f/k/a )<br>PAQUETTE ELECTRIC CO., INC., )<br>    Defendants ) | **CASE NUMBER 04-11578 PBS** |

## DEFENDANT, FIRE SYSTEMS, INC.'S, OPPOSITION TO EMERGENCY MOTION BY DEFENDANT, FIRE SUPPRESSION SYSTEMS OF NEW ENGLAND, INC., TO PRECLUDE EXPERT TESTIMONY AS A RESULT OF FAILURE TO DISCLOSE EVIDENCE AND SPOLIATION OF THAT EVIDENCE

The defendant, Fire Systems, Inc., hereby submits this opposition to the emergency motion of the defendant, Fire Suppression Systems of New England, Inc., to preclude expert testimony as a result of failure to disclose evidence and spoliation of that evidence.

## STATEMENT OF THE CASE

This is a subrogation case which arose as a result of a water loss on January 19, 2003, at the property insured by the plaintiff (Marriott Residence Inn owned by Hodan Properties). The defendant, Fire Suppression Systems of New England, Inc. (hereinafter "FSSNE"), alleges that the defendant, Fire Systems, Inc. (hereinafter "FSI"), failed to comply with the disclosure requirements set forth in F.R.C.P. 26(a)(1)(B) with respect to the damaged pipe fitting and further alleges spoliation of the same.

ARGUMENT

In its motion, FSSNE requests that both the plaintiff's and FSI's expert(s) be precluded from testifying at trial without setting forth specific arguments pertaining to each party and without providing the necessary, relevant facts. FSI's position in this matter differs from that of the plaintiff.

The issue at hand is whether FSI failed to disclose that the damaged pipe fitting was retained after the loss on January 19, 2003. FSSNE incorrectly states in its motion that it first learned that the pipe fitting was retained during the deposition of FSI's expert, Mr. Tom Klem, on August 16, 2006. First and foremost, the damaged pipe fitting was the property of the plaintiff's insured, not FSI. Not disclosed in FSSNE's motion was the fact that on the night of the loss, FSSNE was present at the hotel and on the following day, replaced all broken pipes and damaged fittings. This was reduced to writing in correspondence from the Vice President of FSSNE to the hotel's general manager and the hotel owner's representative on January 22, 2003. (See Exhibit "A" attached hereto.) FSSNE was one of the first parties present after the loss. Moreover, FSSNE videotaped the scene and the damage on the date of the loss and on the videotape, was coverage of ice protruding from the sprinkler piping. Not only was FSSNE the first party to inspect the damaged pipe fitting, but they also removed the damaged evidence. Therefore, FSSNE cannot state in good faith that they first learned that the damaged pipe fitting was retained by the parties on August 16, 2006, in light of the videotape and aforementioned correspondence, both of which are in the possession of counsel for FSSNE. FSI never retained the pipe fitting in question.

Given the fact that FSSNE handled the evidence in question, it had the opportunity to inspect the evidence and turned it over to the hotel, sheds light on the true, non-complying party.

2

In its motion, FSSNE states "[t]rial is imminent and the failure to make disclosure has caused FSSNE substantial prejudice that cannot be cured at this late hour." The only party causing prejudice to the moving party is FSSNE itself in it its failure to make the appropriate inquiries and requests to its own representatives. FSI is in no way responsible for FSSNE's lack of due diligence. Furthermore, such inquiries should have been made to the plaintiff as its insured retained the evidence in question as provided to them after the repairs were performed by FSSNE.

Pursuant to F.R.C.P. 26(a)(1)(B), a party must provide to the other parties "a copy of, or a description by category and location of, all documents, data, compilation, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses... ." FSI did not violate the aforementioned and therefore, should not be sanctioned. The pipe fitting in question was never in FSI's possession, custody or control. F.R.C.P. 26(a)(1)(B) further requires that such tangible things be disclosed if they are used in support of the disclosing party's claims or defenses which is not applicable here. Aside from the fact that the pipe fitting was not in the possession, custody or control of FSI, it was also never referenced or relied upon in any expert report, claim or defense. The damaged pipe fitting was never inspected by FSI nor did it ever request an inspection. FSI's expert, Mr. Klem, who is referenced in FSSNE's motion as "an experienced and seasoned investigator and expert witness" did not rely upon or inspect the pipe fitting in support of his expert opinions and conclusions. Therefore, FSI did not violate F.R.C.P. 26(a)(1)(B).

FSSNE relies upon correspondence dated October 13, 2003 (written prior to the filing of suit), from a representative of GAB Robins, Michael C. McDonnell, to Mr. Klem. Mr. McDonnell was merely an independent investigator retained by FSI who at the time, did not know the issues surrounding the possible cause of loss. In the correspondence, reference is made

3

to the availability and whereabouts of the broken sprinkler pipe and/or joint valve for inspection. Mr. Klem, as FSI's expert, never inspected the pipe or joint valve nor did he determine the need to as it was not an issue or evidence to be relied upon in his opinions and conclusions. FSSNE's entire basis for its motion is that FSI failed to disclose that it's expert had been informed of the pipe fitting's whereabouts. FSSNE was the party with initial access to the damaged pipe fitting and the party who knew the whereabouts of such evidence throughout litigation. FSSNE's allegations and accusations including "lack of candor" against FSI are wholly unsupported and in direct contradiction to the actual facts. In addition to those arguments above, FSI was under no obligation to disclose the fact that its expert had been informed of the whereabouts of the evidence prior to the filing of suit as this information was readily available to FSSNE.

FSSNE further mischaracterizes the issues in the instant case. In its memorandum of law, FSSNE states that the sprinkler fitting is "at the heart of this case". Not once throughout discovery did counsel for FSSNE raise the issue of the pipe fitting as a potential cause of the loss nor was it raised in any of the parties' expert reports. FSSNE further contends that had it been aware of the existence of the pipe fitting, "it would certainly have conducted significant discovery" and would have "hired a metallurgist". FSSNE is attempting to make a last minute attempt at conducting further discovery. During discovery, FSSNE did not propound a single interrogatory to any party or request the production of documents from any of the parties. FSSNE has also failed to set forth in its motion the forensic value that a metallurgist expert would add to its case. The core issue, contrary to that set forth by FSSNE, is why or how water got into the dry pipe system. The fact that there was water inside the dry pipe system which froze during extreme temperatures and then caused the pipe to burst is not central to causation and is not disputed by any party. Having an expert inspect the damaged pipe fitting would neither exonerate nor exculpate any of the parties.

Lastly, FSSNE's allegation of spoliation does not pertain to FSI. The pipe fitting was never in FSI's possession but rather in that of the plaintiff's insured. It was the duty of the plaintiff to make available during discovery, if requested or relied upon by any expert, the evidence in question. If FSSNE is of the opinion that the replaced, damaged pipe fitting was of some value in the determination of the cause of the loss, it would have been the duty of FSSNE to ensure that such evidence was preserved for later inspection since it had knowledge of its whereabouts immediately after the loss.

FSSNE's motion is merely an attempt to avoid potential liability given the anticipated testimony from FSI's expert as well as the plaintiff's expert in addition to clouding the already established issues. FSI's expert(s) should in no way be precluded from testifying at trial due to FSSNE's failure to complete discovery.

CONCLUSION

For the above stated reasons, FSI respectfully requests that the court deny FSSNE's emergency motion for the reasons stated above.

By its Attorneys,

**MORRISON MAHONEY LLP**

/s/ Gordon L. Sykes
Gordon L. Sykes, BBO #555580
Meredith P. Rainey, BBO #652697
10 North Main Street
Fall River, MA 02720
(508) 677-3100

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on August 31, 2006.

                                                                  /s/ Gordon L. Sykes

# EXHIBIT "A"

# Fire Suppression Systems of New England, Inc.

70 Bacon Street, Pawtucket, RI 02860 Phone - (401) 723-7300 Fax - (401) 724-0879

January 22, 2003

Herb Stanikowski, Owner's Representative
William Roland, General Manager
Marriott Residence Inn
181 Faunce Corner Road
Dartmouth/New Bedford, MA 02747

Reference: Dry Attic Sprinkler System Repair & Service

Herb/William:

Fire Suppression Systems of New England, Inc. (FSSNE) responded to a call of a pipe burst on January 19, 2003 at approximately 5:30pm. The dry system in the attic was found to be 100% charged with water and frozen in several places. At the request of the Owner and Owner's Representative, FSSNE began working on the system on Monday afternoon, January 20, 2003 to restore the system to 100% functionality as quickly as possible.

FSSNE repaired all breaks resulting from frozen pipes, replaced all damaged sprinkler heads that had popped as a result of ice in the lines and checked all attic piping for additional areas with ice. FSSNE found several areas with ice in the lines and disconnected the lines, thawed the internal ice and reconnected the piping. FSSNE completed our thorough check of the attic piping and then put an air test on the dry system in the attic overnight on January 21, 2003. The air pressure held overnight and as a result FSSNE re-charged the dry attic system on January 22, 2003 at approximately 3pm. Lastly, FSSNE drained any remaining water which hadn't froze from the dry attic system leaving the dry attic system dry pressurized with air.

Prior to leaving the system fully operational on January 22, 2003, FSSNE conducted an alarm test of the low air switch and the pressure switch on the dry attic system with Paquette Electric. The existing switches did not operate initially and as such were re-wired to ensure the alarms would properly ring in to the fire alarm panel and fire department in the event of waterflow on the dry attic system.

FSSNE has completed our work and test of the supervisory alarms. The dry attic system is 100% functional and the alarms are properly working. If you have any questions please do not hesitate to call. Thank you for the opportunity to serve your fire protection needs.

Sincerely

Thomas O'Connor
Vice President

Contractor's License - RI #39, MA #1209, CT #11511
e-mail: system@firesuppression.com