IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY | : |
|     Plaintiff | :    CIVIL ACTION NO. |
| | :    04-11578 PBS |
| v. | : |
| | : |
| FIRE SYSTEMS, INC.; | : |
| FIRE SUPPRESSION SYSTEMS OF | : |
|     NEW ENGLAND, INC;. | : |
| PRO CON, INC.; and | : |
| PAQUETTE ELECTRIC COMPANY, INC. | : |
|     Defendants | :    SEPTEMBER 5, 2006 |

---

### PLAINTIFF'S SURREPLY TO DEFENDANT FIRE SUPPRESSION SYSTEMS' MOTION TO PRECLUDE EXPERT TESTIMONY

The Plaintiff, Fireman's Fund Insurance Company, hereby submits the following Surreply in response to the Defendant Fire Suppression System's (FSS) Reply to Plaintiff's Objection to Motion to Preclude Expert Testimony. The Plaintiff will address each of the points raised by Defendant FSS in the same fashion as they were raised; i.e., as numbered paragraphs corresponding to the Defendant FSS' numbered paragraphs.

1. The Defendant FSS has asserted that it repaired the January 19, 2003 pipe freeze at the Plaintiff's insured's premises, but did not retain any piping involved in the loss because it did not contemplate litigation. Neither the Plaintiff nor Defendant Fire Systems Inc. (FSI) have claimed that FSS should have retained portions of the piping. The point of raising this fact is that FSS employees were the first persons who had the

opportunity to inspect the piping after the loss and had access to every piece of the system during that time. It is not reasonable to assume they could have retained the broken piping even if they wished to, as it was not their property.

The Defendant FSS has claimed that a broken pipe fitting in the possession of the Plaintiff is highly relevant to their defense. Despite this, David Bouchard, their disclosed expert, testified that he never even spoke with, or attempted to speak with Jesse Medieros, the FSS employee who was the last person to inspect the system piping before the loss and the first person to inspect the piping after the loss.[1] Clearly, if the broken fitting was as important as FSS is now claiming, their expert would have interviewed Mr. Medieros to gain an understanding of what he observed on the day of the repair work.

The Defendant FSS has claimed that Fireman's Fund contemplated litigation immediately, as evidenced by its retention of engineer Richard Papetti to inspect the loss. The Defendant FSS has no reasonable basis for this claim, and it is an unfair interpretation of the facts. It is standard procedure for an insurance company to hire experts to investigate a loss, especially one of this magnitude. The purpose is to gain an understanding of why the loss occurred as it may trigger coverage issues. The fact that Mr. Papetti determined that a third party was responsible for the loss does not imply that he was retained in order to find a party for Fireman's Fund to sue. Further, the Defendant FSS claims that Mr. Papetti determined that Defendant FSI was responsible for the loss. This is a mischaracterization of the facts. Mr. Papetti initially determined that the activity of Defendant FSI was the most probable cause of

---

[1] Mr. Bouchard was not produced for deposition by Defendant FSS until August 31, 2006, so a copy of the transcript was not available at the time of the filing of this surreply.

2

the loss. However, this opinion was based on incorrect facts and assumptions, and was altered in response to further discovery to an opinion that the loss was most probably caused by the negligent installation of Defendant FSS. This opinion was contained in his final report, which the Defendant FSS conveniently did not attach to its reply. See Exhibit 1.

2. The Defendant FSS has made reference to Exhibit B as the letter from Mr. Papetti to Thomas Klem (Defendant FSI's expert), but the correct exhibit number is Exhibit F as filed. The letter implies that Mr. Papetti and Mr. Klem had at least some exchange involving the broken pipe fitting. Mr. Klem chose not to inspect the fitting as he did not believe it to have any forensic value. See Exhibit 2, excerpts of Thomas Klem deposition, at page 124, line 11.

3. The Defendant FSS has claimed that it requested the opportunity to "inspect the property involved in the loss", and implies that this included the broken piping, as evidenced by its attached letter. This is a blatant misrepresentation and mischaracterization by Defendant FSS. The Defendant FSS *only* requested the opportunity to conduct a site inspection of the premises. Undersigned counsel alerted Defendant FSS' counsel that the premises were repaired and there was really nothing on site for her expert to see that directly corresponded to the loss. Defendant FSS' counsel informed undersigned counsel for the Plaintiff that she understood this and simply wanted her expert to have the opportunity to view the system in place. There was never any request to inspect evidence removed from the scene, and the Defendant FSS' assertion that such was implied is a fabrication as nothing beyond a site inspection was ever discussed.

3

       The Defendant FSS further implies that the Mr. Papetti and Mr. Klem did something nefarious by failing to suggest or volunteer that the section of piping was available. This is also a misleading statement. The Defendant FSS' expert, David Bouchard, stated in his deposition that he never made any request for any physical evidence from the other experts. In fact, Mr. Bouchard testified that he engaged in no conversation with the other experts beyond introductory pleasantries.

4.   The Defendant FSS has claimed that it repeatedly requested color photographs of those attached to Mr. Papetti's report, and "confirmation that no other photographs were taken at that time". Counsel for Defendant FSS attaches various email exchanges to support this assertion. This is another blatant misrepresentation by Defendant FSS. As can be seen by the exhibits they themselves attach in support of this claim, there is no request for anything other than color copies of photographs attached to Mr. Papetti's first report. Color scans of these photos were produced, and the Defendant FSS does not contest this. The Defendant FSS, nor any other Defendant in this matter, has ever made a request for any photographs that Mr. Papetti may have taken in addition to those attached to his first report. The allegation that such a request has been made is untrue and unsupported by Defendant FSS' own exhibits.

5.   The Defendant FSS claims that it, "on several occasions", made requests for the Plaintiff's entire file related to inspections and repairs of the system. In support of this contention, the Defendant FSS produces one letter requesting the same. Putting aside the fact that the request as drafted in no way conforms to the procedure for requests for production outlined in F.R.C.P. 34, the Plaintiff asserts that it has

4

produced its entire file to the Defendant FSS on more than one occasion. The broken piping was not in the Plaintiff's file, nor were Mr. Papetti's photos of the same. The Defendant FSS has failed to show that the Plaintiff did not conform to this request. The implication is that this request would cover the piping itself, but no reasonable interpretation of the request as written would reveal such a meaning.

6. The Plaintiff does not dispute that Defendant FSS first learned that this piping was retained until August 16, 2006. However, as noted above, FSS employees were the first individuals who had access to the broken piping and repaired the same. No one else even had an opportunity to witness the any of the system piping until all the repairs were completed.

7. The allegations made by Defendant FSS in this paragraph have been previously addressed, and again, Defendant FSS is attempting to mislead the Court. The only color photographs requested by Defendant FSS were those attached to Papetti's first report, which were produced multiple times. Defendant FSS' request for the Plaintiff's entire file on the installation and repair of the system was complied with, even though the request was improper under the Federal Rules.

8. The Defendant FSS claims that the piping, if disclosed, could have provided some sort of exculpatory defense. Again, this is just posturing by the Defendant FSS, as it is unable to articulate how any type of exculpatory defense could be had for it by an inspection of the piping. There is no claim that the piping was defective in any way. And, even if the piping was found to be defective, Defendant FSS would be liable as the installer of the defective piping.

5

9. Defendant FSS' employees were the first and only individuals to see the system immediately after the loss. They would have had the opportunity to observe any broken pieces and fittings at that time, but chose not to. The Defendant FSS' expert elected not to even interview the FSS employee in charge of the repair work. The Defendant FSS' characterization of the importance of this fitting as possibly providing a defense is unsupported by its own actions.

10. The Defendant FSS characterizes the present situation as "fact and expert discovery is over" and "the parties are conducting the final expert depositions as permitted by the court". Again, the Defendant FSS is misleading the Court as to the true situation of the parties. The Defendants took the deposition of a previously undisclosed fact witness, James Parenteau, on August 29, 2006. No objection was made by the Plaintiff. The parties have been cordial up to this point in allowing as much discovery as is required. As such, the Defendant FSS is fully aware that it could conduct any additional discovery if it were so willing. The Defendant FSS has chosen not to conduct this discovery so that it can rely on the "prejudice" caused to it by non-disclosure. It is clear that if this piping was as important as they claim, the Defendant FSS would have had it inspected as it has been given every opportunity. But this is not the case, and in fact, the Defendant FSS never even informed their expert, Mr. Bouchard, that the piping was made available for immediate inspection!

11. Defendant FSS claims that its expert testified that the piping may indicate whether a small amount of water was in the system at the time of the loss, or whether it was full. This is true, but their expert was unable to articulate how this may be possible from an examination of a broken pipe fitting. Any possible forensic value gleaned from

6

this pipe fitting is speculative at best and the Defendant FSS is unable to articulate any reasonable defense that may be had to it from inspection.

12. The Plaintiff has never attempted to mislead or prejudice the Defendant FSS in any way. The Plaintiff's behavior throughout discovery has been courteous and completely amenable to any request. It has not objected to depositions taken outside the court's order, nor has been unwilling to allow further discovery on any issue the Defendants so require. The Defendant FSS quotes holdings of various courts that state that discovery is to be fair, and not an ambush. The Plaintiff has engaged in no behavior that is not in conformance with these holdings. The purpose of this motion is clearly an attempt to gain a strategic upperhand at trial as the Defendant FSS has nothing offered by the Plaintiff in any attempt to cure the alleged prejudice.

13. The Defendant FSS has alleged that the Plaintiff has engaged in conduct which puts it in an unfair and prejudicial position. The Defendant FSS has claimed that the Plaintiff should be sanctioned and not allowed to have its liability expert testify at trial. The Defendant FSS has offered no reasonable basis as for why this should be the imposed sanction. Indeed, the prejudice to the Plaintiff by the institution of this sanction would far outweigh any prejudice borne to the Defendant by the Plaintiff's actions.

    The Defendant FSS has attempted to prove its allegations by offering numerous untrue and misleading statements to the Court. See paragraphs numbered 1, 3, 4, 7, and 10 above. As such, the Plaintiff was compelled to respond to the Defendant FSS' reply. It is the Plaintiff's position that the misleading and untrue statements were made knowingly and with malice towards the Plaintiff. As such, the Plaintiff would

request sanctions in the form of attorney's fees for its time in responding to the Defendant FSS' reply memorandum.

**FIREMAN'S FUND INSURANCE COMPANY**
By its attorneys,

/s/ Erik Loftus
Erik Loftus, Esquire (BBO# 656315)
Law Offices of Stuart G. Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096
(860) 292-1116

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

**CERTIFICATE OF SERVICE**

---

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY | CIVIL ACTION NO.: 04-11578 PBS |
| v. | |
| FIRE SYSTEMS, INC.; FIRE SUPPRESSION SYSTEMS OF NEW ENGLAND, INC.; PRO CON, INC. and PAQUETTE ELECTRIC COMPANY, INC. Defendants | SEPTEMBER 5, 2006 |

---

      I hereby certify that on September 5, 2006, a copy of foregoing **PLAINTIFF'S SURREPLY TO DEFENDANT FIRE SUPPRESSION SYSTEMS'MOTION TO PRECLUDE EXPERT TESTIMONY** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ <u>Erik Loftus, Esq.</u>
Erik Loftus, Esquire (BBO# 656315)
Law Offices of Stuart G. Blackburn
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096
(860) 292-1116