# EXHIBIT 2

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIREMAN'S FUND INSURANCE ) | |
| COMPANY, ) | |
| vs. ) | |
| FIRE SYSTEMS, INC.; ) | Civil Action |
| FIRE SUPPRESSION SYSTEMS ) | No. 04-11578 |
| OF NEW ENGLAND, INC.; ) | |
| PRO CON, INC., ) | |
| and ) | |
| PAQUETTE ELECTRIC COMPANY,) | |
| INC., ) | |

CONTINUED DEPOSITION OF THOMAS J. KLEM, a witness called on behalf of Fire Suppression Systems of New England Inc., pursuant to the applicable provisions of the Federal Rules of Civil Procedure, before Jessica L. Bisaillon, a Registered Professional Reporter, Certified Shorthand Reporter, and Notary Public in and for the Commonwealth of Massachusetts, at the offices of Morrison Mahoney LLP, 10 North Main Street, Fall River, Massachusetts 02722, on Wednesday, August 16, 2006, commencing at 1 p.m.

COPY

```
 1        A P P E A R A N C E S:

 2

 3   Law Offices of Stuart G. Blackburn

 4   BY:  ERIK LOFTUS, ESQUIRE

 5   Two Concorde Way

 6   Post Office Box 608

 7   Windsor Locks, Connecticut 06096-0608

 8   Appearing on behalf of Fireman's Fund

 9   Insurance Company

10

11   Morrison Mahoney LLP

12   BY:  GORDON L. SYKES, ESQUIRE

13   10 North Main Street

14   Fall River, Massachusetts 02722

15   Appearing on behalf of Fire Systems, Inc.

16

17   Brody, Hardoon, Perkins & Kesten, LLP

18   BY:  JOCELYN M. SEDNEY, ESQUIRE

19   One Exeter Plaza

20   Boston, Massachusetts 02116

21   Appearing on behalf of Fire Suppression

22   Systems of New England, Inc.

23

24
```

```
 1              A P P E A R A N C E S:

 2

 3   Law Offices of Jacqueline L. Allen

 4   BY:   KATHLEEN C. TULLOH BRINK, ESQUIRE

 5   262 Washington Street, Suite 601

 6   Boston, Massachusetts 02108

 7   Appearing on behalf of Pro Con, Inc.

 8

 9   Curley & Curley, P.C.

10   BY:   DAVID D. DOWD, ESQUIRE

11   27 School Street

12   Boston, Massachusetts 02108

13   Appearing on behalf of Paquette Electric

14   Company, Inc.

15

16

17

18

19

20

21

22

23

24
```

Page 122

1  A.    Your logic is great, but I just am not going to
2        comment on that. I would defer to Jim Rogers or
3        others on that. I'm not a mechanic.
4              MR. DOWD: Thank you very much,
5        Mr. Klem.
6              (Off the record.)
7              REEXAMINATION BY MS. SEDNEY:
8  Q.    Mr. Klem, again, my name is Jocelyn Sedney,
9        representing Fire Suppression Systems. I'm going
10       to follow up on some of the questions that you've
11       been asked today and then sort of continue on to
12       the extent that I need to --
13 A.    Okay.
14 Q.    -- from the other day.
15              I have been handed -- actually, and this
16       is sort of above and beyond each of those things,
17       but I was handed today by your counsel a letter
18       to you dated October 13th, 2003 from GAB Robins.
19       And in that letter, which it looks as though it's
20       the letter officially retaining you with respect
21       to this case, there's some discussion about Hodan
22       Properties having in their possession a portion
23       of the broken sprinkler pipe. Do you recall
24       that?

Page 123

1  A.  Yes.
2  Q.  And he indicates that the same will not be
3      available for inspection until after the 27th,
4      which I assume that's after October 27th. He
5      then asks you to make arrangements with the
6      expert to inspect the piece of piping. Did you
7      ever do that?
8  A.  No, I did not.
9  Q.  And did you ever determine whether or not that
10     portion of the broken sprinkler pipe was
11     available for inspection?
12 A.  I think it was, yes.
13 Q.  And how did you determine that?
14 A.  I had a letter from Papetti that I -- I actually
15     had in my file, and we mentioned last time
16     that that communicated that I chose to take a
17     look at the system first, then -- then look at
18     the broken pipe.
19 Q.  Are you saying that first you wanted to look at
20     the system, then you wanted to look at the pipe?
21 A.  Yes.
22 Q.  And did you look at the pipe?
23 A.  I did not.
24 Q.  You simply didn't get around to it or why not?

```
 1   A.   I -- I just didn't do it.
 2   Q.   You don't have any particular reason, you just
 3        didn't do it?
 4   A.   No.  I saw enough documentation that -- you know,
 5        that there was obviously a freeze that occurred
 6        from photographic documentation, and I didn't see
 7        the forensic value that I could lend to it beyond
 8        that.
 9   Q.   So without having seen it, you determined that it
10        wasn't necessary for you to inspect it?
11   A.   I didn't see any additional forensic value that I
12        could -- I could gain from the pipe that I hadn't
13        already seen in the photographic documentation.
14   Q.   And you made that determination without having
15        actually seen it?
16   A.   That's right.  That's right.
17   Q.   And your -- Mr. McDonald also asks if you could
18        please do something in terms of investigating
19        whether or not Massachusetts has a chain of
20        custody rule.  And did you ever do that?
21   A.   I did not.
22   Q.   And he asked you to determine how the piece of
23        sprinkler pipe became in the possession of Hodan
24        Properties.  Did you ever do that?
```

1  A.  No, I did not.
2  Q.  Do you have any idea where that piece of
3      sprinkler pipe or joint valve is now?
4  A.  It's with Mr. Papetti, I presume, from his
5      correspondence to me.
6  Q.  Now, when you say that it's with him based on the
7      correspondence, was that the letter that was sent
8      to you in November of 2003?
9  A.  Yes.
10 Q.  Have you talked to Mr. Papetti since November of
11     2003 as to whether or not he still has the
12     sprinkler pipe or joint valve?
13 A.  No.
14 Q.  Have you spoken to anybody after October 13 of
15     2003, the date of this letter, as to whether --
16     where that sprinkler pipe is now?
17 A.  No.
18 Q.  And I trust you didn't think it was important to
19     refer to this broken sprinkler pipe or valve in
20     either one of the reports that you've issued?
21 A.  That's correct.
22 Q.  Nor to mention that it was made available for you
23     for inspection, but you chose not to inspect it?
24 A.  That's correct.

1  Q.  Did you take any steps in this case with
2      reference to the other parties in this case to
3      inform them that in fact a portion of the
4      sprinkler pipe was available for inspection so
5      that they could take advantage of that
6      opportunity if they chose to?
7  A.  No, I did not.
8          MS. SEDNEY: Okay. Let's mark this
9      letter as the next exhibit.
10         (Whereupon, Exhibit 18 was marked for
11     identification.)
12 Q.  Earlier today, not too long ago, you referred to
13     a sample form that you indicated was a sample
14     form in reference to NFPA 72?
15 A.  Yes.
16 Q.  Is that correct?
17 A.  Yes.
18 Q.  And that's the sample form that relates to the
19     certification or the acceptance of the systems
20     that were installed or the fire protection
21     system?
22 A.  Yes.
23 Q.  And did you have any sample forms or documents
24     with respect to NFPA 25?